1818.

Thompson
v.
Berry.

Order accordingly.

---

Thompson *against* Berry and Van Beuren.

*July 1.*

Where the plaintiff was sued at law, 'on notes alleged by him to be usurious, and he suffered a verdict and judgment to be taken against him, without making a defence, or applying to this court, on a bill of discovery, in due season, he was held concluded, and not entitled to relief.

An assignment of a debt, usurious in its creation, to a third person, who has knowledge of the original transactions, will not cover it from the scrutiny of the court. And where sufficient ground appeared to support the charge of usury, a reference was ordered to a Master, to take an account, &c.

THE bill stated that the plaintiff, having become embarrassed and pressed for money to pay certain debts, made a note, dated *March* 12, 1807, in favour of *John Ward,* (a broker) for 500 dollars, payable in sixty days; and on the 19th of *March,* he made another note to *J. W.* for the like sum, payable in 60 days, for which he received of *J. W.* 1,000 dollars, but was obliged to allow him interest thereon, at the rate of *two per cent. per month.* That the plaintiff was under the necessity of renewing these notes, as they became due, and on such renewal, to allow the same rate of interest; that the notes continued to be renewed, from time to time, until by adding the interest to principal, he became indebted to *J. W.* in the sum of 2,089 dollars, for which he gave his note; that *J. W.* was at that time himself indebted to the defendant *Berry,* by notes, on which usurious interest had been allowed to *B.,* at the rate of *two and a half or three per cent. per month ;* and the plaintiff, in order to satisfy *Ward.*

1818.

THOMPSON
v.
BERRY.

and enable him to comply with the demand of *B.*, was compelled to make another note to *Ward*, for the said 2,089 dollars, and to procure it to be endorsed by *John E. Russel* and *Edward Childs*, which note, so endorsed, was delivered to the defendant *B.*, at his request, in exchange for the notes of *Ward*, to *B.*, and on such exchange, *B.* exacted and received, for the thirty days the plaintiff's note had to run, interest, at two and a half or three per cent., and also fifty dollars, advanced by *Ward*, as a premium for making the exchange of the notes. That on the 1st of *November*, 1810, the plaintiff made another note for 1,219 dollars, payable three months after date, to *Evander Childs*, being in consideration of the renewal of certain other notes, made at usurious interest. That on the 2d of *November*, 1811, the plaintiff made another note to *E. Childs*, for 1,976 dollars, payable in 60 days, on which usurious interest was exacted, and given in exchange and renewal of former usurious notes. That interest was paid on all the notes above mentioned, from their inception to their last renewal, at the rate of *two and a half or three per cent. a month.* That the defendant, to whom the notes were transferred by *Childs*, had knowledge of the usurious considerations, and did himself receive usurious interest; and that he became possessed of the last mentioned note, for 1,976 dollars, as being the accumulated amount of principal and usurious interest, at the rate aforesaid, after many renewals of a note, or original loan, of *one hundred dollars*, given by *Lewis I. Costigan*, to the defendant *B.*, and endorsed by the plaintiff, from motives of friendship. That the plaintiff thus became liable upon his three notes, to 5,284 dollars, and 87 cents.

That prior to the 10th of *May*, 1811, the plaintiff became indebted to the defendant, *Van Beuren*, (a broker,) in a certain sum, by means of usurious loans, the amount of which the plaintiff could not now ascertain. That *E. Childs, J. J. Ward* and *John E. Russel*, were also indebt-

ed to *Van Beuren* on notes, all of which were founded on usurious loans; that the defendants confederating together to get possession of the plaintiff's property, procured, by their attorney, judgments to be entered upon the demands of the defendant *B.* against the plaintiff, by confession, bond, and warrant of attorney, given as security, amounting to 5,284 dollars and 27 cents, and also an assignment from the defendant *V. B.* to the defendant *Berry,* of four judgments against the plaintiff, and against *Childs, Ward,* and *Russel,* on their notes or endorsements, and which judgments at the time of the assignment, were usurious, and well known and understood so to be, between the defendants, and that the defendant *B.* further exacted large sums' for forbearance thereon, particularly the sum of 228 dollars and 34 cents from the plaintiff, in a note given by him, and indorsed by *T. Colyer.* That instead of the plaintiff being indebted to the defendant *B.,* the sums above-mentioned, amounting to 6,363 dollars and 41 cents, there would be, if the account was fairly taken upon their money transactions, and lawful interest only allowed in every case, upon the sums actually lent, a considerable balance due to the plaintiff. That the defendant *B.* has caused executions to be issued on the judgments against the property of the plaintiff, which is advertised for sale by the sheriff. The plaintiff waived all forfeiture, and was willing to pay what was legally and justly due; and prayed for an injunction, and for general relief, &c.

Several affidavits were annexed, verifying the facts stated in the bill.

The defendant *B.* in his answer, denied all knowledge of the transactions between the plaintiff and *Ward,* but believed it probable, that certain sums were paid on the renewal of the notes. He set forth, at length, the particulars of the transactions with *Ward* and the plaintiff, which it is unnecessary to state here.

The answer of *Van Beuren* also stated the particular

transactions as to the notes mentioned; and that in *September*, 1810, the notes being unpaid, he commenced suits against the plaintiff, *Childs*, *Ward*, and *Russel*, respectively, as maker and endorsers; and issues having been regularly joined in the suits, they were noticed for trial at the sittings in *New-York*, in *April*, 1811, when inquests were regularly taken, by default, pursuant to notice, and that *Childs* was a witness for the plaintiff, in three of the causes, and judgments were entered up in the Supreme Court, on the 10th of *May*, 1811, on the verdicts so found by the jury.

Replications were filed, but no proofs were taken on either side. The cause was brought to a hearing on the pleadings.

*Sampson*, for the plaintiff.

*C. Baldwin*, for the defendants.

The Chancellor. The plaintiff appears to have been most grievously oppressed, by a series of usurious exactions, and it seems indispensable to justice, that such a victim should be relieved. There is sufficient ground for disregarding the judgment confessed in *January*, 1812, and for opening the accounts at large, from the very commencement of the dealings ; nor can it be permitted that the usury, accumulated while the plaintiff was in the hands of *Ward*, should be covered by the assignment of that debt, to the defendant, *Berry ;* who, by his own answer, appears to have had sufficient knowledge of those dealings. The statute limiting interest, is the old and established law of the land, and it is the duty of the court to support it. Usury vitiates every transaction; and even a *bona fide* holder of the tainted instrument, cannot protect himself. The court has nothing to do with the theories that are now afloat, condemning all legal limitations of

interest. The policy of the law rests with the legislature, not with the courts of justice. But I am not prepared to allow, that the wise statesmen and profound jurists of every preceding age, have on this point, been the abettors of a stupid and barbarous system. Laws against usury, have uniformly prevailed in all enlightened and commercial nations, ancient and modern, and this fact weighs heavily against an untried theory. I should doubt whether there be any just analogy between the interest of money, and the price of articles of commerce, which is left to regulate itself. The loan of money creates the interesting relation of *debtor* and *creditor*, which has, in all ages of the world, produced fearful consequences ; and to preserve the laws of justice in that relation, has hitherto required the utmost sagacity on the part of government, and the greatest wisdom and firmness in the administration of justice. I should apprehend dangerous effects upon the public morals, if creditors were left at liberty to demand what rate of interest they please, and compound interest when they please, without being under any admonition of human laws. I consider the statute against usury to be a check to hard-hearted avarice, and a protection thrown around the necessitous. " Nothing is clearer to my mind," said that very able lawyer and statesman, Lord Ch. *Redesdale*, than that in a commercial country, the statute of usury ought to be strictly enforced."

As to the judgment in favour of *Van Beuren*, the plaintiff is concluded, and cannot be relieved. He suffered a verdict to be taken against him at law, when he might have pleaded the statute of usury, or, upon certain terms, obtained the aid of a bill of discovery. He neglected to use his means of defence in due season, and it is now too late.

*The Court* accordingly directed a reference to a Master to take and state an account between the plaintiff and defendant *Berry ;* and that in taking the same, all the matters, accounts, charges, dealings and transactions, included in

1818.

THOMPSON
v.
BERRY.

Utility and policy of statutes against usury.

the judgment for 5,284 dollars, and 87 cents, confessed by the plaintiff to the defendant *Berry,* and mentioned in the pleadings, be opened from the time of the first loan from *John I. Ward,* as stated in the pleadings; and that the defendant *Berry* be credited only with the monies covered by the said judgment, and actually loaned to the plaintiff, or paid to or for him, or received by him, together with the lawful interest thereon, from the times the same were loaned, paid, or received. And it was further directed, that the Master make rests, at such times as it shall appear that the accounts were liquidated, or the notes renewed; and that for the better taking the accounts, the parties were to be examined on interrogatories, and to produce all books and papers in their custody or power, relating thereto, upon oath, before the Master, as he should direct.

Decree accordingly.