35 U.S. 392 (____)
10 Pet. 392
*ELIZA BROWN, APPELLANT,
v.
FRANCES SWANN, ADMINISTRATRIX OF WILLIAM T. SWANN, AND RICHARD B. ALEXANDER.
Supreme Court of United States.

*393 This case was argued by Mr. Key and Mr. Jones, for the appellant; and by Mr. E.J. Lee and Mr. Swann, for the appellees.
Mr. Justice WAYNE delivered the opinion of the court.
This is an appeal from the circuit court of the United States for the district of Columbia and county of Alexandria.
The bill of the appellees, who were the complainants in the circuit court is for an injunction to stay further proceedings on a judgment at law, confessed by the appellees to the appellant.
The bill states that the intestate, William T. Swann, in his lifetime, in October, 1819, proposed to borrow from the appellant 2300 dollars, and pay her for the use of the money at the rate of ten per centum per annum. That the appellant agreed to the proposition. 1000 dollars were secured by a ground rent of 152 dollars per annum, on a lot in Alexandria; and the balance of the loan by a bond, bearing an interest of six per cent. per annum, with William B. Alexander and Richard B. Alexander as securities. The intestate died in October, 1820; and in June, 1821, his administratrix paid the appellant 230 dollars; in August following, she paid the further sum of 1055 dollars and 30 cents, to which she adds 115 dollars, believed by her to have been paid by the intestate before his death. After these payments, the appellant brought separate suits upon the bond for 1300 dollars against the administratrix, and the securities to the bond. The bill then states, that the appellees "felt themselves at a loss to know what course to pursue in defence of the said suit. That they had been advised that the transaction between the *defendant and your oratrix's late husband, was usurious; [*499 and they understood from their counsel, that if the case was defended at law, upon that ground, and they should succeed, that the debt would be lost to the defendant. That your oratrix and orator were not disposed to push the matter to this extremity; your oratrix knew that her late husband had received the money, and she wished, at all events, that the amount borrowed should be returned to the defendant; and your oratrix's counsel, understanding her wishes, agreed, as he informed her, at the bar, at the time the judgment was rendered upon the bond, with the counsel of the defendant, and in the presence and hearing of the court, that your oratrix's plea of usury should be withdrawn, and a judgment rendered on the bond; with an understanding, that your orator and oratrix should have the privilege of resorting to a court of equity, to have the claim settled upon the same principles, as if she had instituted against the defendant a bill in chancery for the discovery of the usury. Your oratrix and orator have been advised that they are bound, in court of equity, to pay nothing more than the principal debt, and that they are entitled to have credit for the moneys which she has paid, to be deducted out of the sum of 2300 dollars, loaned as aforesaid; and only bound to pay the balance *394 of principal, after such deduction shall have been made." The bill further states, that if a settlement could be made upon these principles, that the oratrix would hold herself bound to pay "the balance which might be due, as soon as the affairs of the estate would admit it." That the defendant has issued an execution against your oratrix, and a separate execution against Richard B. Alexander and William B. Alexander, for the whole amount of the bond upon which the judgment at law was rendered; claiming not only the full amount of the debt, but the interest upon the same; and is about to enforce the execution against herself and the securities. The bill concludes with a prayer, "that the defendant may, upon her corporal oath, true and perfect answers make to the several allegations of the bill and the matters therein charged, as if the same were again repeated, and she were interrogated thereto; that the complainants might have an injunction from the court, restraining the defendant from proceeding further upon the judgment, and from executing the same in any manner; and that the defendant may render a true and perfect account of all moneys received by her, on account of the aforesaid debt." Upon filing the bill, the court granted an injunction. At a subsequent *500] *court, the injunction, on motion of the defendant, was in part dissolved; and the defendant filed a demurrer and answer to the bill. In the answer the usury is denied. The complainants filed exceptions to the answer. The injunction was then dissolved, and liberty was given to the defendant to prosecute her judgment at law. At the same time, on complainants' motion, leave was given to amend their bill, and to prosecute the suit thereon; and the cause was returned to the rules for further proceedings. The defendant's demurrer to the complainants' bill, and the complainants' exceptions to the answer, were then set down for argument. The cause was argued upon the demurrer and exceptions: and in the June term of the court, 1828, the judges were of opinion, that the court had jurisdiction "of the cause in equity, by virtue of the third section of the statute of usury of Virginia; although the plaintiffs have not stated in the said bill, that they cannot prove the usury without the aid of the defendant's answer; and although judgment had been rendered at law: and the court ordered the demurrers to be overruled, so far as they proceed upon these grounds." The plaintiffs had leave to amend their bill, and the injunction was reinstated as to the whole amount of the judgment in the bill mentioned, except the sum of 899 dollars and 70 cents. The supplemental bill was filed, and the defendant put in a demurrer and answer thereto.
We do not think it necessary to refer particularly to the supplemental bill, or to the demurrers and answers of the defendant to either the original or amended bills, or to the intermediate proceedings in the cause. The court made its final decree in December, 1832; and in it, and the orders overruling the demands, has put the case upon two points; which, contrary to the opinion of the court, we think so decidedly in favour of the appellant, that we need not go further. In both, the circuit court was of opinion that the court had jurisdiction *395 of the cause, by virtue of the third section of the statute of Virginia, against usury; and in the first order overruling the demurrers, it added, "although the plaintiffs have not stated in their bill that they cannot prove the usury without the aid of the defendant's answers, and although judgment has been rendered at law."
The third section of the statute is in these words: "any borrower of money or goods may exhibit a bill in chancery against the lenders, and compel them to discover on oath the money they really lent, and all bargains, contracts or shifts which shall have passed between them relative to such loan or the repayment thereof, and *the interest [*501 and consideration for the same; and if thereupon it shall appear that more than lawful interest was reserved, the lender shall be obliged to accept his principal money without interest or consideration, and pay costs; but shall be discharged of all the other penalties of this act."
The first question then to be considered is, can the bill of the complainants be brought within the operation of the section. We think not. Besides only making the contingent and prospective offer to pay the principal, when the affairs of the intestate "would admit of it;" which is altogether insufficient, as any other indefinite offer or acknowledgement of obligation to pay the principal would be: the bill is deficient in the material averment, essential to all such bills of discovery as this is, that the complainants are unable to prove the facts sought from the conscience of the defendant by other testimony; but on the contrary, facts are stated in it from which a different presumption may be fairly raised.
When the legislature of Virginia passed the statute, it fixed the nature and extent of the jurisdiction of a court of equity to compel a discovery, upon oath, from an interested party, in a suit either at law or in equity, and the rules which equity had prescribed to itself to enforce its jurisdiction in this regard. It knew the distinction between a bill for such discovery, and other bills in chancery; which are also bills for discovery. One of the former is a bill for the discovery of facts alleged to exist only in the knowledge of a person, a party to a private transaction with the person seeking the disclosure; essential to the establishment of a just right in the latter, and which would be defeated without such disclosure. In other words, it is a bill to discover facts, which cannot be proved, according to the existing forms of procedure at law. The jurisdiction of a court of equity, in this regard, rests upon the inability of the courts of common law to obtain, or to compel such testimony to be given. It has no other foundation: and whenever a discovery of this kind is sought in equity, if it shall appear that the same facts could be obtained by the process of the courts of common law, it is an abuse of the powers of chancery to interfere. The courts of common law having full power to compel the attendance of witnesses; it follows that the aid of equity can alone be wanted for a discovery in those cases where there is no witness, to prove what is sought from the conscience of an interested party. Courts of chancery have then established rules for the exercise *396 *502] of this jurisdiction, to keep it within its proper limits, *and to prevent it from encroaching upon the jurisdiction of the courts of common law.
The rule to the applied to a bill seeking a discovery from an interested party, is, that the complainant shall charge in this bill, that the facts are known to the defendant, and ought to be disclosed by him, and that the complainant is unable to prove them by other testimony; and when the facts are desired to assist a court of law in the progress of a cause, it should be affirmatively stated in the bill that they are wanted for such purpose. Such is the rule in Virginia; as may be seen in Duval v. Ross, 2 Munf. 290; and in Bass v. Bass, 4 Hen. and Munf. 478: and it will be applied to the construction of the third section of the statute against usury, upon the authority of her own courts.
Many other authorities to the same purpose might be cited from English and American reports. Unless such averments are required, is it not obvious that the boundaries between the chancery and common law courts would be broken down; and that chancellors would find themselves, under bills for a discovery from an interested party, engaged in the settlement of controversies, by evidence aliunde, which the common law courts could have procured, under the process of a subpna: in delaying proceedings at law, by pretences that a discovery is wanted, for the sake of justice: and in enjoining judgments, upon indefinite allegations of the plaintiff having a knowledge of facts which give to a defendant an equity to be released: though the defendant might have availed himself of the evidence of third persons to establish the same facts, in the progress of the cause, or of the powers of chancery to procure them, by a discovery, to assist the court in deciding it; which last is the case now under consideration.
The section of the statute then, under which the circuit court entertained this bill, and enjoined the judgment, should be so construed, as to give the benefit of it to a borrower, only in those cases in which a complainant seeking for a discovery avers that he is unable to prove the facts by other testimony. There is one strong reason too for applying this rule to a borrower seeking relief under this law; and it is, that it permits him to make an appeal to the conscience of the lender, upon terms more favourable than he could have done in equity, to relieve himself from an usurious contract, before this statute was passed. The lender, upon making the discovery, is to receive his *503] principal, without any interest; and is to *pay costs. This advantage given to the borrower, must be viewed by a court of equity in the nature of a penalty, upon the same principle that other forfeitures, imposed by statutes against usury, are viewed as penalties, which equity will not assist to enforce at all, much less by any evidence aliunde. If the lender denies the usury charged upon his oath, the oath should decide the question before the chancellor. If it be not so, equity will be converted by the section into an assistant for the enforcement of a penalty: which has never been its province.
By limiting the operation of the section to a denial upon the oath *397 of the defendant, the harmony of chancery jurisdiction to its civil law original is preserved: and surely it is not unreasonable, that a complainant's bill, seeking a discovery, for the want of all other testimony, should be not retained after the answer has denied the matter sought. So it was decided in this court, in the case of Russell v. Clarke, 7 Cranch, 79; and the same position is laid down by other courts. Ferguson v. Walters, 3 Bibb, 303; Nourse v. Gregory, 3 Litt. 378; and in Hawkins' Executors v. Sumpter, 4 Dessaus. 105.
We think, too, that this construction of the operation of this section is justified by its letter. The words "and if thereupon it shall appear, more than lawful interest was reserved;" have a direct reference to the oath of the lender denying the usury charged, and are exclusive of evidence aliunde, to establish it.
Such proof has heretofore been only used to advance the policy of statutes against usury in courts of common law, as for the greater purposes of strict justice between borrowers and lenders in courts of equity. Unless a statute then, in so many words, or by an inference which does not admit of a doubt, commands the courts of equity in Virginia to give relief from usurious contracts, by evidence aliunde, without requiring the borrower to pay principal and interest; the law should not be so construed. The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.
But the section under review should have strict construction as to the relief intended to be given by it to a borrower; because it is not a law in furtherance of strict justice between the borrower and lender. The former has by it, upon the discovery of the usury by the lender, the use of the money without paying the interest fixed by the law as a fair compensation for the loan of money. Strict justice requires from the party claiming to be released by equity, *that he should do [*504 equity: and in cases of usury, relief has heretofore only been given upon the payment of principal and interest. Shall then a construction be given to this section by which a borrower may in all cases, even after judgment has been obtained against him, resort to a court of equity in Virginia to establish his statutory right, by evidence aliunde, to be relieved from the payment of interest upon money of which he has had the use. If he has such proof, let it be used in a court of common law, to get under the statute still greater advantages from the lender; to throw upon him all the forfeitures and penalties of the act. This would be to advance the policy of the law to the full extent of what it is intended to prohibit; and to embrace the state in the forfeitures which may be recovered. He should not be allowed to use it for his own interest, exclusively, in a court of equity; by which a result follows far short of those sanctions existing in the law to restrain and to punish what it declares to be an offence. It seems to us, that this section was intended to give to a borrower relief from an usurious contract, by an appeal to the conscience of the lender for a discovery; when the former, from the want of all other testimony, is obliged to refer his cause to the oath of his adversary in a bill of discovery; and *398 that oath decides the question before the chancellor; and that it was not intended to exclude the ordinary interference of a court of equity, between borrowers and lenders in usurious contracts, to enforce the payment of the principal, and that interest which the statute itself fixes as a fair rate of compensation for the loan of money. The fact of the legislature having released the lender from all other penalties in the act, except the loss of interest can make nothing against the construction of the statute: for that is only the consequence of the inability of every legislature in this country to compel a person to make a discovery, by which he may be subjected to legal pains, penalties, or forfeitures.
The construction now given to the section is that which has been given to it by the court of appeals in Virginia, in the case of Marks v. Morris, 2 Mun. 507. The points decided in that case, and that particularly which has been under our consideration in this, have been questioned by judges of the same court; but the case has never been overruled. In our opinion, from an examination of all the cases since in the court of appeals, down to the case of Fitzhugh v. Gordon, 2 Leigh, 626, the reasoning of the first is not shaken.
We now come briefly to consider the question whether the 505*] *complainant can have relief in equity, the transaction having been carried into judgment. We think he cannot. The bill states the circumstances under which the judgment was confessed. There was neither accident nor surprise. The plea of usury was withdrawn, and the judgment confessed, in the belief, by the defendants, that they might afterwards resort to a court of equity to prove the usury; and upon the entry of the judgment there is annexed a reservation in terms for a resort to equity. That such reservation was made by any understanding with the counsel of the plaintiff at law, is denied by him: and the court had no authority to make it a part of the record, so as to give any benefit to the complainants.
The right to resort to a court of equity for relief under the statute to its full extent, exists independently of any reservation of the courts of common law, when relief is asked in time. The courts of common law can neither add to nor take away from the right: nor by any qualification of their judgments, give parties any right to be relieved from them in equity, contrary to its established principles.
We do not think, therefore, the reservation in this instance upon the record a matter of any consequence. The question is, can the complainants have any relief in equity against the judgment. The general rule is, that after a verdict at law a party comes too late with a bill of discovery. Duncan v. Lyon, 3 Johns. Cha. 355; Bailone v. Brent, 1 Vern. 176. There must be a clear case of accident, surprise, or fraud, before equity will interfere. In the case of Prothew v. Forman, 2 Swanst. 227, the lord chancellor says: "if a defendant has a good legal defence, but the matter has not been tried at law, it becomes a serious question whether a party, who, being competent does not choose to defend himself at law, can come into equity and change the jurisdiction. Consider the effect: he might *399 not have succeeded at law; but by coming into equity he secures so much additional time." In the same case the chancellor says: "Lord Thurlow was very tenacious of the doctrine, that a party who had an opportunity of a trial at law, and would not avail himself of it; could not come here." Such now is the established doctrine in England, and has been for a longer time the doctrine in the United States. And the doctrine, as applied to a case for relief from usury, is, that a defendant sued at law on a contract alleged to be usurious, will not be entitled to a bill of discovery, if he suffers a verdict and judgment to be taken against him; and especially when he does so without making a defence at law. The case of Thompson v. Berry and *Van Buren, 3 Johns. Ch. 395, is one directly in point; [*506 meeting the case before us also in this, that an injunction will not be granted against a judgment where a party seeks a discovery of usury, and claims a return of the excess beyond the legal interest. The reason of the rule is, that the proof of usury is a good defence at law; and when it is in the knowledge of the defendant, no satisfactory reason can be given why the discovery was not sought while the suit was pending. It is our opinion then that whenever a party seeking a discovery had knowledge of the facts during the pendency of a suit at law, equity will not permit him to do so afterwards to enjoin a judgment.
The bill will be ordered to be dismissed, and the injunction is dissolved.
This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Alexandria, and was argued by counsel; on consideration whereof, it is ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby reversed and annulled. And this court, proceeding to render such decree as the said circuit court ought to have rendered in the premises, doth order, adjudge, and decree that the order for a perpetual injunction be, and the same is hereby dissolved; and that the bill of the complainants in this cause be, and the same is hereby dismissed; and that this cause be, and the same is hereby remanded to the said circuit court, with directions to the said court to carry this decree into effect.