The plaintiff recovered a verdict in this action for $7,500 as damages for a personal injury. The judgment, of course, implies that the defendant is responsible for this injury, and yet it would be difficult, upon the conceded facts, to conceive of a case in which the railroad had so little to do with it, or where the damages which the plaintiff has suffered can be so plainly traced to his own misconduct. On his own statement he was a young man twenty-four years old, with a wife and child living in Rome, N Y About eight o'clock in the evening of Saturday, June 3d 1893, he left his house and went down town, met a companion, and both of them engaged in drinking quite freely. In the course of the evening it seems that they concluded, for some reason, to go to Utica, fifteen miles east of Rome, but as the regular passenger train leaving Rome for the former place at 10.25 had left, they were willing to make the journey on a freight train. The plaintiff says that a freight train came along at the rate of ten or twelve miles an hour and he jumped on. His companion thought this performance too dangerous, or, as he expressed it "too risky," and failed to get on. So the plaintiff, after riding a short distance and finding that he had left his companion behind, jumped off the train and went back after him. After some time both of them found another freight train north of the station which they supposed was about to go east, and boarding it, they got upon a coal car. They rode some little distance on this train when it stopped, for the reason that another freight train was upon the same *Page 666 
track just ahead of them. They assumed that by getting on the train ahead they would reach Utica sooner. So leaving the coal car they proceeded along a highway and through a cattle guard to the forward train, and got on to the platform of the caboose attached to that train. At this point in the railroad there was a complicated system of tracks, at least seven in all, if not more. There was some switching on other tracks, and after a time the conductor came along and ordered both men off the train, which of course he had not only the right to do, but it was his duty. The plaintiff's companion obeyed the order and got off, sustaining no injury whatever. The plaintiff says that he refused to get off while the train was moving, or until it was stopped, and states that thereupon the conductor took him by the shoulder and pushed him off, and immediately he came in collision with another train that was on an adjoining track and sustained the injury complained of.
The theory of the action is that the conductor either used more force than was necessary to remove the plaintiff from the train, or put him off at such a dangerous place that he was liable to receive, and did receive, personal injuries. It is not denied that the plaintiff at this late hour in the night, after leaving the platform of the caboose, came in contact in some way with a car on an adjacent track and was injured. But that he was thrown from the car as claimed, or that the conductor used any unnecessary force or violence, was denied, and the evidence of the conductor and of other persons present who had any opportunity of knowing the facts, contradicted the plaintiff's version of the transaction. Any misconduct or negligence on the part of the conductor in removing the plaintiff from the train is sustained only by the testimony of the plaintiff himself, and that is far from being clear or consistent with the whole transaction. But so far as we are concerned with the actual methods employed to remove the plaintiff from the train, we will assume that his evidence was sufficient to carry the case to the jury, and we will assume that the charge of the learned trial judge to the effect that while the defendant's servant had a right to remove the plaintiff from *Page 667 
the train, yet he had no right to use unnecessary violence or to expose him to any unnecessary danger, was correct. That is the most favorable view that can be taken of the case upon the plaintiff's own version of the transaction.
It is enacted in section 426 of the Penal Code that, "A person who rides on any engine or any freight or wood car of any railway company, without authority or permission of the proper officers of the company, or of the person in charge of the car, or engine; or who gets on any car or train while in motion, (for the purpose of obtaining transportation thereon as a passenger); is guilty of a misdemeanor." That the plaintiff and his companion were guilty of a plain violation of this statute is not denied, and yet the plaintiff has succeeded in obtaining from a jury a very large verdict against the defendant. This case, it seems to me, will furnish a precedent for a new class of actions under the law of negligence, since any one, however careless or reckless, may, in defiance of the statute, board a railroad freight train, and when the conductor undertakes to remove him, unless he uses all the circumspection and gentleness possible, the party removed may, upon his own testimony, recover against the railroad. We do not mean to say that this court can always prevent such results, since the questions are, in their nature, questions of fact to be determined at the trial and by the verdict of a jury. All that we mean to say now is that when a railroad company attempts to defend itself in a court of justice against such a claim as this, it is entitled to the benefit of every fact and circumstance that can have any legitimate bearing upon the nature of the transaction, and it has the right to be accorded the benefit of every principle or rule of evidence that has any tendency to aid in its defense. In this case, since we have assumed that the plaintiff's testimony could not be ignored by the court, there were three questions of fact before the jury. These were, the negligence of the defendant depending only upon the proof with respect to the unlawful or improper act of the conductor, the contributory negligence of the plaintiff, and the damages which he was entitled to recover. The defendant *Page 668 
was entitled to draw out from the witnesses any fact or circumstance that had any legitimate bearing upon these issues or any of them.
On the trial the defendant called a witness who had a conversation with the plaintiff a short time after the accident, in which the plaintiff stated to him some of the facts and circumstances under which the accident occurred. Of course the admissions or declarations of the plaintiff to this witness touching the circumstances of the accident were competent evidence against him. Among other things this witness testified that the plaintiff admitted to him that his wife had tried to prevent his going to Utica, and that if he had gone back with her the accident would not have happened. The defendant's counsel then propounded to the witness this question: "Did he tell you what he was going to Utica for?" This was objected to as immaterial. The objection was sustained, and the defendant's counsel excepted. It must be borne in mind that this witness was testifying to a conversation which he had with the plaintiff himself concerning the circumstances, and cause of the accident. The defendant was entitled to all the conversation, and whatever the plaintiff admitted to him concerning the purpose for which he got on to the train was not incompetent. If he was upon the train in pursuit of some urgent errand brought about by some overruling necessity, or if he was there in consequence of some stress of circumstances, the jury might be disposed to and could legitimately look upon his conduct with some leniency. If he was there in pursuit of some amusement or upon some unnecessary errand it would naturally change their view of his conduct from the beginning. While if he was unable to tell the purpose for which he boarded the train or the end that he had in view, it might well constrain the jury to doubt whether his mind was in such a condition as to enable him to remember what transpired. With respect to this exception it is, therefore, quite sufficient to say that the defendant was entitled to place before the jury all that was said by the plaintiff to the witness on that occasion and the purpose for which the plaintiff violated a statute to *Page 669 
get upon this train and the purpose for which he was upon the platform of the caboose. This testimony might have had some bearing either upon the issue of contributory negligence or upon the damages which the jury was asked to award him. I think the ruling of the court which denied to the defendant the right to make the inquiry was error.
The defendant's counsel also propounded to the same witness, in various forms, the following question: "Q. Did he, at any time, at any of the conversations or suggestions as to the transaction, say in words or in substance, that the conductor or brakeman threw him off, or forced him off of the caboose or off its platform?" This question was objected to by the plaintiff's counsel as incompetent and immaterial, which objection was sustained by the court and an exception taken in behalf of the defendant. The defendant's counsel then changed the form of the question and made it somewhat more simple. He then put it in this form: "Q. Was there anything said by him (meaning the plaintiff) in regard to any one having forced him off any car, as the cause of the accident?" "Q. And if so, state what it was?" The plaintiff's counsel objected to this question as being a compound question, and added, "The first part of it I object to." The court sustained the objection, and the defendant's counsel excepted. The defendant was seeking to prove by this witness the plaintiff's own version of the transaction which he claimed resulted in the injury, and this was at a time immediately after the accident, before any suit was commenced and perhaps when there were not as many temptations to pervert the truth. On the trial the plaintiff attempted to show that the cause of the injury was the violent or improper act of the conductor in removing him from the train. If, before he had commenced the suit, and while the whole transaction was fresh in his mind, he had attempted to describe the occurrence, and had omitted from the description the most important circumstance that he testified to at the trial, and the only circumstance which would enable him to recover, surely this discrepancy in the two statements might have been brought by the defendant to the attention *Page 670 
of the jury. (1 Greenleaf's Ev. §§ 196, 201.) When a party to an action before suit attempts to state the facts of the case and omits to state the only fact upon which a subsequent action could be based, and then at the trial attempts to supply this missing link by his own testimony, surely all this may be presented to the jury to enable them to judge whether the party told the truth as a witness upon the trial or before he became a litigant when the facts and circumstances were fresh in his memory. So I think the ruling of the court upon the objection made to the questions put to the witness, and which are here referred to, was error, for which the judgment should be reversed and a new trial granted, with costs to abide the event.
All concur (PARKER, Ch. J., and VANN, J., on second ground stated in opinion), except BARTLETT, J., dissenting, and MARTIN, J., not sitting.
Judgment reversed, etc. *Page 671