EDMOND VAN DYK, Appellant, *v.* HENRI DUJARDIN, Respondent.

First Department, July 6, 1925.

Bills and notes — trade acceptances — defense of usury — plaintiff's evidence shows that trade acceptances were given at ten per cent to cover money he invested in defendant's business — agreement provided for ten per cent profit — defendant contends that acceptances cover money loaned by plaintiff to defendant — error to direct verdict for defendant — question for jury whether arrangement constituted loan or investment in business.

In an action to recover on trade acceptances in which the defense of usury was interposed, it was error for the court to direct a verdict for the defendant, since it appears that the plaintiff's evidence tends to show that trade acceptances were given at ten per cent to cover money invested in defendant's business under an agreement whereby plaintiff was to receive a profit equivalent to ten per cent of the money invested, while the defendant's contention was that the acceptances covered money loaned by the plaintiff to the defendant. Under the evidence presented by both sides a question of fact arose as to whether or not the arrangement between the parties constituted a loan, or an investment by the plaintiff in the defendant's business.

APPEAL by the plaintiff, Edmond Van Dyk, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 9th day of October, 1924, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 1st day of December, 1924, denying plaintiff's motion for a new trial made upon the minutes.

*Wood, Cooke & Seitz* [*Hamilton McInnes* of counsel; *William G. Cooke* with him on the brief], for the appellant.

*Maurice B. Gluck,* for the respondent.

BURR, J.:

At the close of the case, which was tried before a judge and jury, the learned trial justice directed the jury to bring in a verdict for the defendant.

The action was brought to recover the amount of three trade acceptances, each dated October 5, 1921. On the trial the plaintiff offered these three trade acceptances in evidence, and then proved that the value in United States currency of the first trade acceptance on the due date thereof was $1,907.64; of the second trade accept-

ance on the due date thereof, $1,792.37; of the third trade acceptance on the due date thereof, $1,714.31. Plaintiff then rested.

The three trade acceptances are alike except as to time of payment and amounts and all state that " the obligation of the acceptor hereof [the defendant] arises out of the purchase of goods from the drawer " (plaintiff).

These trade acceptances were executed by the defendant and delivered to the plaintiff in connection with the carrying on of the business of the importation of wicker furniture from Belgium. The defendant Dujardin wanted to start this business in New York. The plaintiff Van Dyk was a native and resident of Belgium, and they agreed to go into the business together.

The defense interposed by the defendant to defeat a recovery on these trade acceptances was usury, and in order to establish this the defendant, when called as a witness in his own behalf, testified as follows: " In the beginning of 1921 I had conversations with Mr. Edmond Van Dyk. I started the importation of wicker furniture from Belgium. That seemed to interest Mr. Edmond Van Dyk, who proposed to me to go into that business with me and to advance me moneys up to the amount of 200,000 francs. His only interest would be ten per cent on his money. * * * He would advance the money according to the purchases that I would make. It developed I made purchases and these purchases were paid by him on the other side."

Several months later, in June, 1921, according to the defendant's version, Van Dyk and Dujardin talked their business affairs over in New York, and Dujardin testified that he told Van Dyk " that the business was going on, and he [Van Dyk] insisted on having notes, which I purposely agreed upon, as I was paying him interest of ten per cent, it would show on these notes it was really ten per cent interest on the money."

The trade acceptances, however, were given in October of 1921, and at the time they were given Van Dyk and Dujardin conferred and Van Dyk furnished an itemized statement of the moneys which he had invested in the business. The statement covered the period from February 24, 1921, to June, 1921, and shows the expense incurred in various trips to and from Antwerp, cables, tips, freight, consular fees, invoices, bookkeeping expenses, and so forth, and the purchase price of all of the goods which Van Dyk had purchased abroad and had caused to be shipped to Dujardin or Dujardin's company in New York.

Dujardin admitted on the witness stand that Van Dyk had paid for all of the furniture and that Dujardin or his company had received it and had sold it and kept the money.

At the time these trade acceptances were given the statement showing the amount of money plaintiff had invested in the business was signed and approved by defendant.

The parties then agreed that the " profit " (and this is the word used) to which the plaintiff was entitled should be computed as the equivalent of interest at ten per cent on the moneys invested by Van Dyk. This exhibit shows that what the plaintiff was entitled to was a profit and it further shows that the notes were given and received " on merchandise received " by Dujardin or his company.

The witness Dittmann, who was the bookkeeper for Dujardin's company, testified that he had charge of the books of the Dujardin Importing Company, and that he made the entries on the books of the company covering the shipments of furniture when they came in, and that the shipments of this furniture were entered as purchases of merchandise, and identified the invoices which were offered in evidence, showing certain characteristic shipments of furniture, all of which shipments, it was conceded by the defendant, were paid for by Van Dyk and received by Dujardin or his company. He further testified that he was present at a conversation held between Mr. Henroise (Van Dyk's father-in-law) and Mr. Dujardin relative to the willow furniture business, and that at that time Mr. Dujardin stated that " he was willing to pay for the goods shipped but that most of the goods were still on hand undisposed of, and he was not in a position to pay for them at that time, but that he would agree to pay for them as soon as he had the funds."

The defendant was the only witness called by the defense. In rebuttal the plaintiff called Mr. Wood and Mr. Dittmann.

In connection with the giving of the trade acceptances Van Dyk gave Dujardin a receipt for the same. This receipt contained the following statement:

" Received from Mr. Henri Dujardin ten acceptances acceptations payable to start on March 1, 1922, to satisfy the payment of all goods shipped up to this date through my intermedium, comprising an interest of ten per cent.

" NEW YORK, *October* 7, 1921.      EDMOND VAN DYK."

Dujardin read into the record a letter from Van Dyk containing the following:

" I just received news from Jack Ubacks regarding samples of arm-chairs that I gave to him. I must tell you that his prices are higher than the former provisions. Ubacks made about twenty of them, very well made, in order to be able to establish his cost

price. Through Bar Harbor 52 francs, save 40 francs, so let me know by return what you think of it as he has to seriously start manufacturing them."

Dujardin admitted that Van Dyk had written him that the arm-chairs which Jack Ubacks made and manufactured " according to the samples that I [Van Dyk] gave him are still much better made than those made in America. Kindly give me an answer of what you think."

In the midst of the trial the defendant interposed a new defense, to wit, the defense of novation, and claimed that he and the plaintiff had made a new arrangement; Dujardin testified that Van Dyk said: " Suppose we will change that, supposing we will make that six per cent interest, what would you say? ' ' Well,' I [Dujardin] says, ' I believe I will pay you.' ' All right,' he [Van Dyk] says, ' suppose we enter into a new agreement and we will make it six per cent interest, and it will be interest; you will refund the capital whenever you like, and you will pay me six per cent interest.' I says, ' All right, I will do so.' "

Dujardin continuing his testimony then said: " Mr. Van Dyk made a new statement and started to draw on me at six per cent interest. I paid during January, February, March, April and May, if I recollect it very well, we have the receipt there — at six per cent interest. At that moment it was understood that when that new .agreement, that virtually he [Van Dyk] would cancel the former agreement of ten per cent and forget about those former notes. He did not do so. In May he continued to try to bring suits and demand the payment of those notes at ten per cent, so I could not see very well how I was going to pay him ten per cent on one agreement and six per cent on the other agreement, and I stopped totally."

The alleged new agreement was in the form of a letter from Van Dyk to Dujardin, which was offered in evidence by the defendant, who claimed that it was a new agreement and constituted a novation. Such letter is as follows:

" Enclosed find statement of the interest with the capital in francs which will be due on the 15th of each month. The capital is 132,306.60 francs, including the profits which were not paid and amounting to 4,410 francs, totaling 136,716.88. The interest per annum on the capital at 6 per cent would be 8,203 francs which would mean per month 683.60 francs. The capital dollars is $4,102.07, plus profit which was not paid amounting to $250, total $4,352.07. The interest per annum in dollars being $261.12 at 6 per cent which will be per month $21.76. As was understood I will have presented to you on every 15th of the month to start on February

15th next, a receipt in francs and a receipt in dollars for the interest to be received, and through the intermediary of the bank. Kindly note that I did not include the interest from the 1st of March, 1922, up to February 15th, 1923, which represents for me a loss of interest of over 6,000 francs. With my best wishes for Mrs. Dujardin and also my best wishes for success in your business in 1923, receive my best salutations.

"(Signed) EDMOND VAN DYK.

" Postscriptum. I hope my dear Henri that you will be able to refund the capital very soon in small parts, the exchange being favorable. " EDMOND."

At the conclusion of the case the learned trial justice granted defendant's motion to direct the jury to bring in a verdict for the defendant, and stated: " I direct the jury to return a verdict for the defendant on all grounds." To which exception was duly taken by plaintiff. Thereafter plaintiff made a motion for a new trial, which motion was denied by the same justice.

The direction of a verdict in favor of the defendant was reversible error.

Defendant's oral testimony as to the agreement with Van Dyk was contradicted by the documentary evidence. It was further contradicted by the testimony of Wood and Dittmann. The jury had a right to pass upon the question as to whether the agreement was a usurious agreement solely for the loan of money or whether the compensation agreed to be paid Van Dyk was for the advancements and expenses made, laid out and expended in connection with the purchase of furniture in Belgium by Van Dyk as appeared from the statements submitted and in evidence and which defendant testified were true and correct.

" A corrupt and usurious agreement will not be presumed from a fact, which is equally consistent with a lawful purpose." (*Valentine* v. *Conner,* 40 N. Y. 248.)

If the arrangement between the parties was that the plaintiff should purchase goods for the defendant abroad and should render services in connection therewith, the usury law (General Business Law, §§ 370, 371, 373) would not apply.

" Usury laws are applicable only to a loan of money, and * * * the terms ' interest ' and ' forbearance ' cannot be predicated of anything other than a loan of money." (*Title Guaranty & Surety Co.* v. *Klein,* 178 Fed. 689.)

The jury were entitled to pass on the testimony of the defendant Dujardin and to weigh it and to pass on his credibility as a witness particularly in view of his sworn statement that he purposely

agreed to put ten per cent in the notes or drafts in order to render void his obligation to repay plaintiff for the large amounts he had expended in purchasing and shipping merchandise to defendant from Belgium. The jury had a right to pass upon his testimony in the light of his avowed motive.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING and McAVOY, JJ., concur; MERRELL, J., concurs in result.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.