UNIVERSAL CREDIT COMPANY, INC., Plaintiff, *v.* CORA LOWELL, Defendant.

City Court of Rochester, Civil Branch, January 28, 1938.

*Henry Redman Dutcher*, for the plaintiff.

*Percival W. Gillette*, for the defendant.

TOMPKINS, J.  The plaintiff brings this action to replevin an automobile sold to the defendant by the Archer Motor Co., Inc., under a conditional contract of sale.  By the terms of the contract the vendor retained the title, with the right to retake possession on default, if any, of the stipulated payments.  On the same day the contract was made it was assigned by the vendor to the plaintiff. It provided for the payment of $683.02 in monthly installments, consisting of eleven of $15 each and a twelfth of $518.02.  The defendant paid eleven monthly installments and $30 upon the final installment.  She is in default as to the balance.  This action results.  The defendant interposes three defenses.  She denies the plaintiff's allegation of demand, asserts that the contract was usurious and alleges that it was secured by fraud.

The defendant was in lawful possession of the automobile.  Consequently an unconditional demand for the immediate possession of the car, and a refusal, were a necessary condition to bringing this action.  (*Cohen* v. *Keizer*, 246 App. Div. 277; *Moran* v. *Abbott*, 26 id. 570.)  A refusal to surrender the car in response to a proper demand would make the continued detention of the automobile unlawful and would warrant the commencement of an action in replevin.

Was there a legal demand?  The defendant, being in default as to the entire balance, the plaintiff was in a position to demand immediate payment of the same, and upon her failure to pay, then to demand immediate possession of the automobile.  The contract so provided.

To support its allegations of demand, the plaintiff's employee Morgan testified that he went to the defendant's home, November 17, 1937.  He stated: " I told her the amount of money due on the contract, which was in one lump sum, would have to be paid or the car would have to be turned over to Archer's, and Mrs. Lowell said that she had an arrangement with Archer whereby she could pay $15 a month on the contract until it was paid in full."  He further testified that she replied: " Well, I am not going to give up the car.  You will have to go and see Mr. Archer about it."  The

defendant testified that the witness saw her at about the time he stated and told her that she would have to pay about $500 or the car. That she told him: " I will go over tomorrow and see Mr. Archer about it. All right, he said." She denied she told him she would not give up the car.

The following day she went to Archer's and saw the general manager, Mr. Bogart. He took up the matter with the plaintiff's representatives and, after some talk, advised the defendant what amount she would have to pay per month on both a twelve- and eighteen-month basis to keep the car. Before going to Archer's she had sent them a check, which was forwarded to the plaintiff, which credited it to the defendant's account on November nineteenth, the day on which the action was started.

Did the plaintiff's representative, Morgan, make the legal demand required as a condition precedent to bringing a replevin action? I think not. The demand must advise the party in rightful possession of the chattel in question that such demander then and there requires that the possessor surrender possession, and must be followed by a refusal. It seems to me, clearly, that a statement that " the car would have to be returned to Archer's " did not advise the defendant that Morgan then and there was demanding the automobile. And the claim of refusal is inconsistent with the fact that the discussion ended with the suggestion that Mr. Archer be first consulted. When she went to Archer's the following day she understood the plaintiff was still open to negotiations in regard to the payment of the balance she owed it. That the plaintiff so understood appears from the fact that it furnished terms of an extension to Bogart to be turned over to the defendant.

At the time this action was started there had been neither the required demand nor refusal. Under such circumstances the action is premature, and must fail. The complaint must be dismissed. As a part of the purchase price is still due and owing, a new demand may be made while defendant's default continues. Hence, the dismissal may not be on the merits.

We will now consider the defense of fraud. While the defendant, an elderly woman apparently about seventy years of age, may not have understood all of the vendor's safeguards included in the contract, the print being so unnecessarily fine, as though made to be used by the holder, should occasion arise, but certainly not to be read by the unsuspecting vendee, yet the evidence does not show any attempt on the part of the vendor's agents to misstate or conceal its terms or to mislead the defendant in any way. She testified she read that part of the contract in readable type which

contains the amount and terms of payment. Furthermore, none of the terms embodied in this insufferably fine print is in question here. The defendant has failed to show fraud.

Does this contract violate the provisions of sections 370 and 371 of the General Business Law? Is it usurious? The taking of more than six per cent for the loan or forbearance of money is prohibited, and renders the contract void. The ostensible object of the statute is to protect the weak, the needy and the unwary from the rapacity of the avaricious. The penalty is severe. Perhaps unnecessarily so. That, however, is for the lawmaking body. The courts must apply the law as they find it.

On September 15, 1936, the vendor's agent, one Cook, procured the defendant to sign a written offer on a blank produced and prepared by him. This blank·contained the cash price of a new car, $777, and a heater, $14. It recited the trade-in allowance for the defendant's Chrysler to be $262, and stated the balance to be paid in payments of $15 each. The original was signed by the defendant but not by the vendor. The copy furnished the defendant contained the notation " Entire balance due 12th month."

One week later, September 22, 1936, the defendant and the Archer Motor Co., Inc., executed the conditional contract of sale in question. This contract recites a sale of a new 1936 Ford Fordor automobile to the defendant " for $262 on or before delivery," leaving a " deferred balance " of $683.02, which the purchaser promises to pay at the office of the Universal Credit Company in eleven equal monthly installments of $15 and one installment of $518.02, " with interest thereon after maturity at the highest lawful contract rate," with a further provision that if the " contract be placed with an attorney for collection, 15% of the amount due thereunder as attorney's fees, or if prohibited, the amount prescribed by law." Exhibit C, a card containing the record of the transaction, was produced by the plaintiff. It contains the items making up the amount of the deferred payment, $683.02. It also recites: the total down payment of $262; " the cash selling price," $792. The items thereon making up the figure $683.02 are as follows: " Differential," $151.77; " Agency Reports," $1; " Recording," 25 cents; " Amount of Check," $530. The " Differential " includes the item of $21.50, being the premium for fire, theft and collision insurance; the balance, $130.27, was the " carrying charge." Carrying $530, the balance of the cash price, for one year; twenty-four and one-half per cent for deferring the payment twelve months.

The plaintiff urges that the usury prohibition has no application to a sale of personal property on credit. Such a contention means that the difference between a cash and a time price is a matter solely for the parties to agree on, limited only by the voracity of

the seller and the necessity of the buyer. In this case its amount was fixed by the prospective assignee, the plaintiff herein.

The proposition, as urged by the plaintiff, finds support in *Tierney Sons, Inc., v. Bajowski* (233 App. Div. 766; affd., without opinion, 258 N. Y. 563). The learned Appellate Division said that the sole question before it was whether the charging of more than six per cent for extending a payment due on a conditional contract of sale constitutes usury. It there held it was not usury for the reason that the transaction was " a sale of merchandise on credit, to which the usury laws have no application. The relation of lender and borrower is not involved." Four cases are cited in support of this proposition.

The Court of Appeals, in considering that identical question, except that a purchase-money real estate mortgage instead of a sale of merchandise was involved, stated in *London v. Toney* (263 N. Y. 439, at p. 446), when confronted with its affirmance of *Tierney v. Bajowski*, that its records showed the only question it considered on the appeal was whether the original sale was usurious. It than states: " We affirmed * * * on the ground that there was no usury *in the original contract* [italics ours] and that the action of replevin was based thereon." The court did not say that the usury statute did not apply to sales of merchandise on credit, but that " there was no usury in the original contract." The court does say (at p. 447): " No statute and no decision by this court have been called to our attention by which forbearance of money must, in order to constitute usury, be preceded by an actual loan. The contrary is true. * * * Either a loan of money or a forbearance of money may be usurious. This is what the statute says. The decisions of this court declare that it means what it says." With this pronouncement by the Court of Appeals, the statement of the Appellate Division in the *Tierney* case that the usury statute does not apply to merchandise sold on credit, made to bolster a point the Court of Appeals did not affirm, is without force. The Court of Appeals states (at p. 446), " Interest and forbearance do relate to a money debt originating otherwise than by a loan."

The Appellate Division cites four cases in support of its statement that the usury statute does not apply to sales of merchandise on credit. First is *Orvis v. Curtiss* (157 N. Y. 667). The Court of Appeals in the *London* case (*supra*) comments (at p. 445): " The facts in the *Orvis* case are such as to demonstrate that there was not only no loan but no forbearance."

The second case cited is *Van Dyk v. Dujardin* (213 App. Div. 791). In this case the trial court had directed a verdict on " all grounds," usury being one. In setting it aside, the appellate court

said there were questions of fact for the jury, and then stated (at p. 795): " If the arrangement between the parties was that plaintiff should purchase goods for the defendant abroad and should render services in connection therewith, the usury law * * * would not apply," and then follows this statement with a quotation from *Title Guaranty & Surety Co.* v. *Klein* (178 Fed. 689), that " Usury laws are applicable only to a loan of money." This latter case was the fourth cited by the Appellate Division in the *Tierney* case. The Court of Appeals in the *London* case disposed of it as follows (at p. 445): " The loan was not one of money, but was a loan of government bonds. The language of the opinion must reasonably be read in the light of this fact."

The third case cited by the Appellate Division in the *Tierney* case is *Dry Dock Bank* v. *American Life Ins. & T. Co.* (3 N. Y. 344). The Court of Appeals in the *London* case (at p. 444) comments on this case: " The court discerned a covert loan of money disguised as an exchange of securities. The only question was whether the transaction constituted a loan of money. * * * The actual decision did not proceed beyond the point of holding that, in the case then before the court, there was in fact a usurious loan of money. Forbearance was not an issue in the case."

It thus appears that there is no foundation for the statement by the Appellate Division in the *Tierney* case that the usury laws do not apply to the sale of merchandise. None of the cases it cites so holds. While the Court of Appeals in the *London* case states that it held the original contract of sale was not usurious and, further, that an actual loan is not essential to invoke the application of the usury statute.

The Supreme Court of Judicature so held 137 years ago. *Van Schaick* v. *Edwards* (2 Johns. Cas. 355, decided in 1801) was an action on three notes representing interest at six and one-half per cent given on a sale of land. The defense of usury was interposed. The principal question was whether the law of New York, where seven per cent was legal, or the law of Massachusetts, whose maximum interest rate was six per cent, applied. Chancellor KENT, holding the Massachusetts statute was applicable, said (at p. 364): " No doubt seems to have been entertained in the Court of K. B. or by the Commissioners in Chancery, but that, upon the sale of lands or goods, an agreement reserving excessive interest for forbearance of payment of a debt might be usurious. To make an agreement usurious, it was held necessary only that there should be a debt created on such sale and a corrupt agreement to take illegal interest thereon for forbearance of payment." The opinion of the distinguished chancellor is quoted by the Court of Appeals in the

*London* case in support of its pronouncement that there need be no actual loan to invoke the penalty of the usury statute.

Unquestionably the law has been for more than one hundred years, and now is, as announced by the Court of Appeals in the *London* case, that the usury statute is not confined to those instances arising from actual loans of money, but is equally applicable to the forbearance of a money debt, otherwise created. The original debt in the *London* case grew out of the sale of land. It was the forbearance of this debt which the court held usurious.

If the forbearance of a debt created out of a sale of land may be usurious, just why may not the forbearance of a like debt growing out of the sale of personal property be usurious? Is there any difference in the principle involved? Both are based on the forbearance of money. In the latter proof may be more difficult. But since when did difficulty of proof condone a wrong? If taking more than the legal rate of interest for the forbearance is established, the penalty follows. And this, whether the debt arose out of the sale of a farm or an automobile.

It is a matter of common knowledge that the price of new automobiles of the same make and type is uniform in the community where they are on sale. The cash price of this car, including a heater, was $791. Although the defendant signed the original offer prepared by the dealer's agent to trade in her Chrysler car at $262 and to pay the balance of $529 in monthly installments of $15, the dealer one week later submitted its proposition that she increase the sale price by the sum of $153.02, making a total balance of $683.02. The items of $1 report charge and 25 cents for filing were proper. A charge of $21.50 for fire, theft and collision insurance likewise was legitimate. Just what was the balance of $130.27 for? What does it represent? The answer is found in the testimony of plaintiff's local credit manager, McIntyre: " Q. In other words, except for the item of insurance, which in this particular case amounts to $21.50, that $151.25 is a charge made because of the fact the payment is to be made over an extended period of time rather than in cash on the date of the contract? A. Yes, sir."

It is the price of forbearing the payment of $530 for one year. In other words, interest.

Had the defendant borrowed $530 of the vendor and then used it to pay the balance on the car she bought, and had she then given her note for $683.02, payable $15 a month for eleven months, and $518.02 at the end of the year, which sum included $21.50 for fire, theft and collision insurance, and secured this note by a chattel mortgage on the car, is there any question that the sum of $130.27

of this amount would have represented interest at twenty-four and one-half per cent, and that it would have been usurious? Just where is the essential difference? The results are practically identical. May the vendor make legal the unconscionable charge of $130 for deferring the payment of $530 of the cash purchase price for one year by smoothly sugar-coating it with phraseology?

A sale on credit incurs risk, of course. Likewise, there is risk in every loan, yet the law allows but six per cent, secured or unsecured. Here is the security of the thing purchased, protected by insurance against collision, fire and theft. Perhaps the security will have to be realized on, may be urged. True, but the contract provides in that event for a fifteen per cent attorney fee.

If the dealer may not legally charge $130 interest on a $530 note secured by a chattel mortgage why should he be allowed to charge the same sum for the forbearance of $530 of the cash purchase price secured by a conditional contract of sale under the guise of calling it a " differential? " Does calling it a " differential " instead of interest save it from illegality? May interest masquerade as a " differential " and so escape the penalty? May a fancy name safely cloak an offense beyond recognition? " The shifts and devices of usurers to evade the statute against usury, have taken every shape and form that the wit of man could devise, but none have been allowed to prevail." (*Quackenbos* v. *Sayer*, 62 N. Y. 344, 346.)

It is for the court to scrutinize the transaction, discover the real facts and the actual intent, and then to apply the law. (*Hall* v. *Eagle Ins. Co.*, 151 App. Div. 815, 826.) The courts condemn subterfuge. Shall it here escape, although it is obvious?

I find that $130.27 of the so-called " differential " was for one year's forbearance of $530 of the purchase price of the automobile in question. I further find that this was a violation of sections 370 and 371 of the General Business Law, and by section 373 thereof renders the contract of conditional sale void.

If the law-making branch of the State believes the usury law should not apply to these transactions it should except them in language that is unmistakable.

The contract is void. The amount of the " differential," which included the illegal interest, was determined by the plaintiff and given to the vendor. The plaintiff's assignment of the contract was made the very day the contract was executed by the defendant. The plaintiff acquired no enforcible rights thereunder. (*Thompson* v. *Berry*, 3 Johns. Ch. 395; *Bliven* v. *Lydecker*, 130 N. Y. 102.)

The complaint must be dismissed on the merits, and the automobile, whose value is fixed at $500, be returned to the defendant.