JANE AND MILO M. LOUCKS v. R. J. REYNOLDS TOBACCO COMPANY AND ANOTHER.[1]

February 10, 1933.

Nos. 29,032, 29,034, 29,343, 29,344.

[1]Reported in 246 N. W. 893.

*Stinchfield, Mackall, Crounse, McNally & Moore, Evans & Evans,* and *Donald A. Holmes,* for appellant.

*George P. Gurley* and *J. A. Cashel,* for respondents.

WILSON, CHIEF JUSTICE.

At about 9:30 p. m. on Friday, May 29, 1931, at the intersection of extended Portland avenue, in Minneapolis, with trunk highway No. 52, a collision occurred between a car owned by R. J. Reynolds Tobacco Company, then operated by one Neil Bagley, and a car owned and operated by Dr. Fred Yseth of Pipestone, with whom were riding his wife, Mrs. Jane Loucks, the wife of Dr. Milo M. Loucks, and Margaret Hargrove, all of Pipestone. The one car came from the north and attempted to cross trunk highway No. 52, colliding with the other car coming on trunk highway No. 52 from the west.

Mrs. Loucks was seriously injured and brought an action against the R. J. Reynolds Tobacco Company and Dr. Fred Yseth, the owners of the two cars, to recover damages for her injuries. Her husband brought suit against them to recover medical expense incurred and for loss of services of his wife. The two cases were tried together and are now before us upon the common record. Mrs. Loucks was given a verdict for $20,000, and her husband was given a verdict for $3,000. On the motion hereinafter mentioned the $20,000 verdict was conditionally reduced to $16,000, to which Mrs. Loucks consented. The verdicts were against both defendants. Defendant R. J. Reynolds Tobacco Company appealed from an order denying its alternative motion for judgment non obstante or a new trial in each action (29,032 and 29,034). Defendant Yseth served a notice of appeal from an order denying his motion for a new trial.

Upon application of the R. J. Reynolds Tobacco Company these cases were remanded to the lower court to permit an application to be made for a new trial on the grounds of newly discovered evidence. Such motion was made and denied.

In the meantime defendant Yseth made an adjustment with each of plaintiffs in so far as he was concerned and paid them jointly

the sum of $5,500, receiving therefor from each what plaintiffs claim to be a covenant not to sue, together with a release and discharge of the judgments entered against Dr. Yseth. The judgments were entered against him because he had not furnished a supersedeas bond, but the judgments were not entered against the R. J. Reynolds Tobacco Company. The release or discharge of the judgments recites that it was made pursuant to the covenant not to sue, which is by reference made a part of the instrument.

Soon thereafter the appellant, R. J. Reynolds Tobacco Company, obtained from this court an order extending the original remand (which contained a provision that if a new trial were granted the remand be absolute, otherwise the later proceedings be promptly returned to this court as a supplementary return and treated as a part of the original return) for the purpose of permitting the tobacco company to serve and file supplemental answers wherein they pleaded the said adjustment between plaintiffs and defendant Yseth, claiming that the transaction released the tobacco company, and that since the judgment had been entered, discharged, and satisfied of record as to Dr. Yseth it operated as a matter of law to discharge the liability of the tobacco company based upon said verdicts, since it was a joint tortfeasor with Dr. Yseth. Plaintiffs' demurrers to the supplemental answers were sustained, and from each of these orders the tobacco company appealed to this court (29,343 and 29,344), giving us four appeals for our consideration herein. The R. J. Reynolds Tobacco Company is now the sole appellant before us.

Neil Bagley, the driver of appellant's car, was employed by appellant in August, 1930, as a salesman. He worked under one Paulson, a division manager located in St. Paul. In January, 1931, Bagley was assigned to a territory consisting of the counties of Mower, Fillmore, Dodge, Olmsted, and part of Goodhue. His duties were confined to his territory. He was a single man and made his headquarters at Rochester, in Olmsted county. His work was to sell tobacco and post advertising. He used posters for windows and muslin signs for outdoors on barns and fences. He had no regular hours. The appellant furnished him a car for use on com-

pany business only. He was forbidden to give rides in this car to any persons other than employes of appellant. He received the advertising matter from his employer and received frequent instructions as to the details of his work. He was also required to make frequent and definite reports of his doings in his territory. His duties included what is known as "consumer work," which means to aid the retailer and sometimes buy from him and sell to his customers or prospective customers and thereby promote the welfare of his employer.

On Monday, May 25, 1931, Mr. Paulson by letter directed Bagley:

"On Decoration Day, May 30 [Saturday] I want you to place at least ten muslin signs along with your other advertising matter, also do consumer work on that day."

This work was to be done at Rochester.

Instead of obeying the directions of Mr. Paulson, Bagley did something else. Late in the afternoon of Friday he took appellant's car, so furnished for his work, and drove to St. Paul, a distance of about 90 miles, arriving about 6:30 p. m. He claims that upon arrival in St. Paul he could not locate Mr. Paulson, so went to his mother's home in St. Paul to get some muslin signs. Upon arriving at his mother's home he found there his brother and brother-in-law. These three men then discussed the matter of going to Prior Lake, about 30 to 40 miles southwest of St. Paul, and of renting a cottage and spending the week-end or the major portion thereof in fishing. This they concluded to do. Subject to what is hereinafter stated, this was purely a pleasure trip. It was exclusively so as to the brother and brother-in-law. The three started on this undertaking about eight o'clock p. m., using appellant's car, it being a Ford with a special truck body—a pick-up body. It had tobacco signs on it giving publicity to some of appellant's products. It also contained various kinds of appellant's advertising matter. On this trip they were so riding in appellant's car, operated by Neil Bagley, at the time of the accident hereinbefore mentioned.

If these facts stood alone there could be no liability on the part of appellant. Neil Bagley attempts to disclose a state of facts upon which plaintiffs predicate liability.

Bagley testified that he left Rochester on Friday afternoon to go to St. Paul to see Mr. Paulson about his pay check, which had not seasonably arrived; that he also wished to see Mr. Paulson to see whether he could post some signs at a particular time, which is not here important, and that he had some advertising matter at some other places he wanted to pick up (apparently he here refers to the advertising signs at his mother's home, where he had left the same about a week before for his own convenience). He testified that he took the muslin signs from his mother's home and put them in the car; that upon concluding to make the trip to Prior Lake, which he had not thought of before meeting his brother and brother-in-law, he planned to hang some of the signs that evening at Prior Lake and Cannon Falls, or both; that he intended to post part that night and the rest on Saturday; that the plans for going to Prior Lake were all made that evening, and the cottage was desired for the week-end. He testified that if they got a cottage he would leave his brother and brother-in-law there over Sunday but that he would leave Saturday night or Sunday. He stated that if they did not find a cottage he would return to St. Paul before going to Rochester. He also stated that part of the advertising matter in the car would be used the following week, but that he planned to post some on the way to Prior Lake if he found a desirable place, some while at Prior Lake, some on the way back to Rochester, some at Cannon Falls, which is in Goodhue county about 40 miles south and a little east of St. Paul and a little north of southeast and perhaps 30 miles away from Prior Lake.

We pass, as for the jury, the mass of evidence tending to impeach the witness Neil Bagley and consider the evidence in the light of his version as to where he was going to post signs. Little importance can be given as to what he would do at Cannon Falls in his territory. He had not arrived there at the time of the accident, nor was he yet on the road thereto. The place of the accident was several miles off the road from St. Paul to Cannon Falls and Rochester. He was not then going in the direction of Cannon Falls, but in the direction of Prior Lake, where he would stay one

or two nights if a cottage were found; otherwise he would return to St. Paul. We will assume, without deciding, and for the purpose of this case only, that in going from Rochester to St. Paul on Friday Neil Bagley was acting within the scope and course of his employment.

The serious question arises out of Bagley's conduct from the time when he reached St. Paul. We do not overlook the fact that his duty required him to be working in Rochester on Saturday. But from the time of his arrival in St. Paul his conduct is unusual and so inconsistent with the line of duty that it is inexplicable. Appellant's car was to be used solely for its business. Bagley was forbidden to haul passengers in it. He knew this. Yet in leaving St. Paul on this trip and at the time of the accident he was actively engaged in the violation of these, his employer's, instructions. He was also putting himself at a place where he knew he could not, and in fact he did not intend to, do the work he was directed to do on Saturday in Rochester. He concluded to make the trip to Prior Lake. The reason therefor is clear. It was to go fishing. His brother and brother-in-law had no other purpose. If Bagley ever intended to post any signs on that trip or at Prior Lake, it was of such a character as to constitute a mere gratuitous service incident to the major undertaking of going on a fishing trip for pleasure. Lotz v. Hanlon, 217 Pa. 339, 66 A. 525, 10 L.R.A. (N.S.) 202, 118 A. S. R. 922, 10 Ann. Cas. 731; Matter of Marks v. Gray, 251 N. Y. 90, 167 N. E. 181; 42 C. J. 1107; Barragar v. Industrial Comm. 205 Wis. 550, 238 N. W. 368, 78 A. L. R. 679.

By what course of reasoning did Bagley assume unto himself the prerogative of deciding that his employer's interest would be served by his going to Prior Lake to put up signs for his employer, who had assigned to him a definite territory? It would seem clear that it was not his aim to serve his employer that put him on the road to Prior Lake; rather a pleasure trip. His duty under positive directions was to work at Rochester on Saturday—a duty that he cast to the wind when he concluded to go to Prior Lake. In making this trip to Prior Lake he was violating directions of his em-

ployer in several particulars. He even wiped out the boundary lines to his territory and claimed an intention to post signs in Hennepin and Scott counties, which do not even adjoin his territory. He ignored his admitted agreement to use the car for the employer only. He hauled two passengers in violation of his duty. He wilfully disregarded his directions to work in Rochester on Saturday, the day on which he expected to fish at Prior Lake.

It is clear that the employe here stepped aside from his work. He was, we believe, traveling under such circumstances at the time of the accident that the perils of the road were unrelated to the service in his employment. An employe's service to the employer need not be the sole cause of the particular journey upon the highway, but it must be a concurrent cause. To establish liability the inference must be permissible that the trip would have been made though the errand had been canceled. This record will not permit such an inference. Of course this employe would no more have thought of going to Prior Lake to post signs than he would have thought of going to Crookston or Fergus Falls to post signs had it not been for the expectation of fishing at Prior Lake. It seems perfectly plain that if the fishing trip had not been in mind this employe would have never invaded this forbidden territory. The employer did not want Bagley at Prior Lake or on the road thereto. It wanted him in Rochester doing the work which it had told him to do.

A satisfactory statement is that the work of this employe, Bagley, in his employment, did not create the necessity of this trip. It was not a part thereof. It was beyond his duties. He could not assume unto himself the prerogative of reaching out for new fields for conquest. To permit an employe so to impose liability on his employer would produce results both unreasonable and unwholesome. The employer has the legal right to conduct his business as he wishes. He may make his own rules, which cannot be disregarded by employes. Indeed, the employer simply must have the right to direct and control the conduct of his employe, to prescribe not only the manner in which the work is to be done but also where

and when it is to be done. He ought to have this right, since he must carry the responsibility therefor. He may also direct when and where his automobile shall be used. No employe can substitute his judgment for the judgment of his employer. Especially is this true as to the territory in which the employe is to work. It would seem that that is what Neil Bagley did here when he concluded to go outside his territory to post signs and advertising matter for his employer. It is not surprising that he was promptly asked to resign. Appellant's liability here depends upon the principle of agency, which rests in contract. The test of the employer's liability is whether there was authority expressed or implied for the doing of the act. Morier v. St. P. M. & M. Ry. Co. 31 Minn. 351, 17 N. W. 952, 47 Am. R. 793; 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 152. We are of the opinion that when Bagley took appellant's car on the trip from St. Paul to Prior Lake he was not acting as the agent and employe of appellant within the scope and course of his employment; but, on the contrary, that he was a wrongdoer, and appellant was not liable for his acts.

The authorities sustain our conclusion. Provo v. Conrad, 130 Minn. 412, 153 N. W. 753; Robinson v. Pence Automobile Co. 140 Minn. 332, 168 N. W. 10; Mogle v. A. W. Scott Co. 144 Minn. 173, 174 N. W. 832; Menton v. L. Patterson Merc. Co. 145 Minn. 310, 176 N. W. 991; Malmquist v. Hellenic Community of Minneapolis, Inc. 163 Minn. 10, 203 N. W. 420; Stauffer v. Schilpin, 167 Minn. 301, 208 N. W. 1004; McCarty v. Twin City E. & P. Assn. 172 Minn. 551, 216 N. W. 239; Rich v. American Tobacco Co. 209 App. Div. 439, 204 N. Y. S. 538; Wagen v. M. & St. L. R. Co. 80 Minn. 92, 82 N. W. 1107; Matter of Marks v. Gray, 251 N. Y. 90, 167 N. E. 181; Jackson v. De Bardelaben, 22 Ala. App. 615, 118 So. 504; Mathis v. Hirsch C. R. Co. 9 N. J. Misc. 335, 153 A. 700; Lotz v. Hanlon, 217 Pa. 339, 66 A. 525, 10 L.R.A. (N.S.) 202, 118 A. S. R. 922, 10 Ann. Cas. 731; Barragar v. Industrial Comm. 205 Wis. 550, 238 N. W. 368, 78 A. L. R. 679; Nelson v. Stutz C. F. Branch, Inc. 341 Ill. 387, 173 N. E. 394; Rose v. Balfe, 223 N. Y. 481, 119 N. E. 842, Ann. Cas. 1918D, 238; 39 C. J. 1284.

Our authorities dealing with the application of the rule that an employer is only liable for the wrongful act of his employe when it is done in the course of and within the scope of his employment are partially collated in Ploetz v. Holt, 124 Minn. 169, 144 N. W. 745. There are later cases. See Shotts v. Standard Oil Co. 181 Minn. 386, 232 N. W. 712.

The case of Elliason v. Western C. & C. Co. 162 Minn. 213, 202 N. W. 485, 488, is cited, but there the driver at the time of the accident had custody of the employer's money and was on the way to the office at the time of the accident for the purpose of turning the money over to the employer. The court there stated that the tendency of the courts is to enlarge the field of operation of the doctrine of respondeat superior. But it was also there said [162 Minn. 218]:

"The doctrine is bottomed on the principle that he who expects to derive advantage from an act done for him by another should answer for any injury which a third person may sustain from the act."

But here appellant sought no advantage of what the employe was doing at the time of the accident.

The evidence does not permit an inference that Bagley was acting within the scope of his employment within the theory of Messenbring v. Blackwood, 171 Minn. 105, 213 N. W. 541.

Respondents cite Piepho v. M. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998; Stoneman v. Washburn-Crosby Co. 153 Minn. 331, 190 N. W. 605; Rau v. Smuda, 175 Minn. 328, 221 N. W. 232; Beckman v. Wilkins, 181 Minn. 245, 232 N. W. 38; Shotts v. Standard Oil Co. 181 Minn. 386, 232 N. W. 712; Lausche v. Denison-Harding Chevrolet Co. 185 Minn. 635, 243 N. W. 52; Marcel v. Cudahy Packing Co. 186 Minn. 336, 243 N. W. 265; Smith v. Yellow Cab Co. 173 Wis. 33, 180 N. W. 125; Loomis v. Hollister, 75 Conn. 723, 55 A. 561; Butler v. Hyperion Theatre Co. Inc. 100 Conn. 551, 124 A. 220.

These cases are easily distinguishable upon the nature and character of the facts involved and are not inconsistent with the conclusion which we reach.

192

The order in each of the original appeals is reversed with directions to enter judgment in each case for the defendant.

This makes it unnecessary to pass upon the questions involved in the subsequent appeals (29,343, 29,344) and they are dismissed.

