## FRANK C. REINHARD v. UNIVERSAL FILM EXCHANGE, INC. AND ANOTHER.[1]

May 15, 1936.

No. 30,744.

*Chester W. Johnson,* for relator.

*Gillette & Meagher,* for respondents.

[1]Reported in 267 N. W. 223.

JULIUS J. OLSON, JUSTICE.

Upon relator's petition this court granted *certiorari* to review an order of the industrial commission denying his claim to compensation under the workmen's compensation act.

The cause was heard by and before a referee who made findings disallowing compensation on the ground that the accident did not arise out of and in the course of relator's employment. Upon appeal to the industrial commission the findings of the referee were adopted and affirmed.

Relator was employed by respondent employer under a Minnesota contract of hire. His territory included the northwestern part of Minnesota and the state of North Dakota. His work was to sell and exploit films for his employer. There were no restrictions specified respecting hours of employment. As a matter of fact, moving picture houses, especially in the small municipalities, are commonly open only during the evening hours. Contact with the owners necessarily is often delayed until after the show is over.

Relator used his own automobile in the business of his employment, and he was allowed three cents per mile for mileage in connection therewith. In addition, he was paid $10 per week to cover depreciation of the car. His salary was $50 per week and an allowance of $5 per day for subsistence and incidental expenses. He was not required to account for this per diem allowance. In relator's behalf it is claimed that this liberal daily allowance was made for the purpose of and in expectation that relator could thereby afford to be a good fellow; that he entertain his prospects and leave with them a favorable impression.

On Saturday, May 26, 1934, relator was staying at the St. Charles Hotel at Dickinson, North Dakota. He had registered and stayed there something like three days. This was his customary stopping place when in that part of North Dakota. About eight o'clock that evening, or perhaps a little later, he made a trip to Hazen, some 90 miles distant from Dickinson and in a northeasterly direction therefrom. The purpose of the trip, so he testified, was to contact one Mr. Haas, the owner of a moving picture theater there; another object of the trip was to "contact" one Miss Schwabe, whose home

was in Dickinson but who at that time was visiting in Hazen. The purpose behind the contact, so he claims, was to arrange for telephone exploitation of moving pictures sold or to be sold to Mr. Haas. Between Dickinson and Hazen is a good, graveled road, surfaced with tarvia. He traveled at the rate of about 50 miles per hour, reaching his destination at about 10 or 10:30 o'clock. He discussed business matters with both Mr. and Mrs. Haas something like three-quarters of an hour. That business finished, he next drove to the post office, parking his car in front, and wrote a report to his employer, addressed to its Minneapolis office. In that report he stated that through Miss Schwabe he hoped to contact the owner of the local telephone system so as to secure neighborly and friendly assistance in exploiting the films to be displayed by Mr. Haas. That job finished and the report mailed, he next "honked" the horn of his car. Miss Schwabe promptly appeared. The two then started back toward Dickinson.

It seems that relator's acquaintance with Miss Schwabe was of very recent origin. He had met her the preceding night at a dance hall at Lehigh, a small mining location near Dickinson where a dance hall was operated. When a short distance from Dickinson, on the way back thereto, relator took a side road to Lehigh. The reason for this side trip, so it is claimed, was to provide lunch and entertainment for his newly found friend, Miss Schwabe. They reached Lehigh about midnight. Relator claims that neither he nor Miss Schwabe drank anything stronger than 3.2 beer and that each partook of a sandwich. There is, however, ample evidence that whiskey was served at the booth occupied by them and that he became "slightly intoxicated." In this situation and such being his condition, it naturally and logically followed that he danced freely with Miss Schwabe and other girls. That he thoroughly enjoyed this frolic is shown by the testimony of Robert Huff, a "deputy sheriff" employed "to keep order," who testified, "they were there until we closed up, and they were one of the last parties leaving there; I should judge along towards three or four o'clock in the morning." He described the dance hall as "a frame building 100 by 50" feet in dimension. It is without toilet or other modern

facilities. Lehigh is a small hamlet of some 50 to 75 inhabitants, mostly coal miners.

Having thus danced and in other ways entertained themselves, relator and Miss Schwabe started toward the highway over which they had come, intending to go back to Dickinson, some three or four miles distant. There was another road they could have taken, a little shorter as to distance but rough and winding; hence, so he says, they drove back to the main traveled highway from which they had departed when they started for Lehigh. On the way to Dickinson relator's car came into violent contact with a truck driven by one Johnson. The testimony of Johnson, if believed, would leave no doubt that the accident occurred because of the manner in which relator drove, the accident having taken place upon Johnson's portion of the highway. There is also ample evidence to sustain a finding that relator was intoxicated. Johnson said that when he went back to relator's car after the impact he noted a well defined odor of whiskey. There is testimony that relator "staggered some, he smelled of liquor, and he talked with quite a thick tongue." Other witnesses testified to the same thing. These witnesses appear to be total strangers to the parties and wholly disinterested in the outcome of the controversy. Relator's explanation of the smell of liquor on his breath is that after the impact and after he had received injuries someone, not identified, offered him a drink of whiskey to revive him and that he drank rather freely for that purpose. However, at best that is only a conflict in the testimony. Johnson's version is that before anyone came upon the scene and immediately after the accident he noted relator's intoxicated condition.

Upon arrival at Dickinson he was treated by a physician. The record is silent with regard to the name of the physician or the nature of the injury treated. Shortly thereafter he returned to Minneapolis and was thereafter confined in Asbury Hospital. Some two weeks after the accident an attorney representing the insurer called upon him there for the purpose of securing information concerning his employment, the accident itself, and his activities at the time thereof and immediately prior thereto. A statement was

duly written and read and signed by him. Therein he claimed that he was alone when the accident took place. Nothing was said at all about the trip to Lehigh or that he had been in company with Miss Schwabe or any other person.

Upon the facts hereinbefore stated it is now claimed in behalf of relator that the record shows as a matter of law that the referee and commission were all wrong in denying him compensation. He claims that the accident having taken place upon the usually traveled route between Hazen and Dickinson, the mere fact of a departure to Lehigh (and he strenuously maintains that there was no departure in fact) did not and could not deprive him of his right to compensation. That is the pivotal point in this case and decisive of result.

■ At the outset we are confronted with the well established rule that:

"It is for the triers of fact to choose not only between conflicting evidence but also between opposed inferences. * * * It is only where the inference upon which the challenged finding rests is not itself reasonably supported or where it is clear that the whole evidence is in manifest and undeniable preponderance against it (even though there is some support for it in the evidence) that there should be a reversal." Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 442, 215 N. W. 678, 679, and cases cited p. 442.

■ It is also clear that the relationship of master and servant must exist and be in force when the accident occurs before liability attaches upon the employer; that is to say, the injury must arise out of and in the course of the employment. If this accident had occurred on the trip between the regular highway and Lehigh or returning therefrom to the highway, no one could question the propriety of the finding made. The fact that the accident occurred upon the regular and appropriate route should not reinstate relator if he in fact was still acting in furtherance of his own and personal frolic rather than in furtherance of his employer's business. Obviously, he had to return to Dickinson. Whether he took the shorter and rougher road or went back upon the regular highway

cannot in and of itself restore him to the status of an employe. The test is whether he was "carrying out some purpose of his employment in his master's business" at the time in question. Lausche v. Denison-Harding Chevrolet Co. 185 Minn. 635, 641, 243 N. W. 52, 55, and cases therein cited.

The New York court, applying the same test in Matter of Marks v. Gray, 251 N. Y. 90, 94, 167 N. E. 181, 183, said:

"If the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

In Kuehmichel v. Western Union Tel. Co. 125 Minn. 74, 77, 145 N. W. 788, 789, L. R. A. 1918D, 355, the court said:

"The test in determining whether the doctrine of *respondeat superior* applies is, generally, whether the person sought to be charged had at the time the right to control the action of the person doing the wrong, both as to the acts done and the manner of doing them. *   *   *"

See also Erickson v. G. N. Ry. Co. 191 Minn. 285, 253 N. W. 770.

Relator's position amounts to this: That because, as he contends, he was out to show Miss Schwabe a good time in furtherance of his employer's business there should be compensation. His claim is, of course, that everything he did on the night in question was for his employer's benefit and advantage. If the triers of fact had chosen to believe him the record might sustain that conclusion. But the trouble is that the triers of fact concluded otherwise. Relator's position is exactly this: Suppose Johnson, the driver of the truck colliding with relator's car, had brought action against relator and employer and a jury had by its verdict found for Johnson and against relator but in favor of the employer, could such verdict stand? We think the record and recited facts are sufficient to sustain such a verdict.

There are many things in the record pointing in a direction quite the opposite to that for which relator contends. The time, place,

and circumstances of the Lehigh visit are not conducive to the support of his position. The fact that he studiously avoided reference to this side trip when he made his statement to the attorney representing the insurance company also points the other way. The same is true with regard to his testimony that he partook of no liquor at Lehigh; that he was sober at the time of the accident; that both had sandwiches there (the record shows that no food of any kind was served); that they were within four miles of Dickinson, on a good tarvia road, when the side trip to Lehigh was made, Dickinson being their conceded objective; the fact that there were no proper toilet or other facilities at Lehigh, whereas at Dickinson everything was modern and appropriate for both entertainment and refreshment. One was obviously an appropriate place for entertainment, the other as clearly not. The unexplained absence of Miss Schwabe as a witness might well leave some doubt in the minds of the triers of fact as to relator's purpose in going to this place. Intoxication also "is a circumstance pregnant with possibility." Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 442, 215 N. W. 678, 679. There are other inconsistencies to which reference need not be made.

This court in McCarty v. Twin City E. & P. Assn. 172 Minn. 551, 216 N. W. 239, 240, had for consideration a situation in many respects similar to the one now before us. The court said (172 Minn. 553):

"The time and circumstances attending this trip, including the testimony as to intoxication and the features of the collision, are such as to throw discredit upon relator's testimony that the trip to Hugo was in his employer's business. His testimony, though not directly disputed, is not inherently so credible that the commission must accept it as true. We are not authorized to overthrow the finding of fact here assailed, for on the whole record it cannot be said that the evidence compels a finding that relator was in the course of his employment when going to or coming from Hugo, the evening in question."

And in Engsell v. Northern Motor Co. 174 Minn. 362, 365, 219 N. W. 293, 295, this court said:

"The commission might reasonably conclude that decedent took this trip as a simple accommodation for Mr. Carlson, a mere private purpose, and not as a part of nor in the course of his employment. The fact that the commission would have been justified in a contrary conclusion does not avail. We cannot make findings of fact for the commission when an issue of fact is presented. The burden of proof rested on the petitioner, and we cannot say that the evidence here is conclusive either way."

Relator's trouble is that he fails to distinguish between a *frolic* and a *detour*.

Writ discharged and order affirmed.