## IDA E. KAYSER v. CARSON PIRIE SCOTT & COMPANY AND ANOTHER.[1]

No. 31,543.

August 5, 1938.

[1]Reported in 282 N. W. 801.

*Olsen & Hopp* and *Moonan & Moonan,* for relator.
*Reynolds & McLeod,* for respondents.

HILTON, JUSTICE.

*Certiorari* to review an order of the industrial commission denying relator's claim to compensation for the death of her husband, Alfred W. Kayser.

There is no dispute over the facts. Deceased lived at St. Peter, Minnesota, and respondent Carson Pirie Scott & Company is a wholesale merchandise concern located in Chicago, Illinois. At the time of his death and for several years prior thereto, Mr. Kayser was employed by the respondent as a traveling salesman, soliciting orders from retail dealers. His territory included several counties in the southern part of Minnesota, and he used his own car for business.

The Bee Hive store located in New Ulm, Minnesota, and operated by J. A. Ochs & Son, Inc. had been a customer of the respondent and its salesman Mr. Kayser for many years. In January, 1936, this store burned, and the owners erected and restocked a new store building. Much of this new stock was purchased from the respondent through Mr. Kayser. The latter was at this store Saturday, August 8, 1936, and secured an order from Mr. Ochs, who also wished to see some button samples. It appears that Mr. Ochs was anxious to place an order for buttons as soon as possible but was not satisfied with the samples deceased had with him. Mr. Kayser informed his customer that he expected a shipment of additional

580

samples to be awaiting him upon his arrival at home that evening, and Mr. Ochs testified that it was the understanding between him and deceased that if the latter received the samples he would bring them to New Ulm the next day for Ochs's inspection.

The following morning, Sunday, August 9, deceased left his home in St. Peter accompanied by relator and their daughter. The latter was a school teacher and had an appointment for an interview at one o'clock Sunday afternoon with the superintendent of schools at Pipestone, Minnesota, concerning a teaching position. Mr. Kayser drove from St. Peter, through New Ulm, and on to Pipestone, the journey to the latter place being for the sole purpose of enabling his daughter to keep her appointment. New Ulm is located some 32 miles west and slightly to the south of St. Peter, and Pipestone is well over 100 miles southwest of New Ulm.

The return trip from Pipestone was started after the daughter's interview had ended between 2:00 and 2:30 o'clock in the afternoon. The party had proceeded only a short distance on the return trip when their car was involved in a collision with a train at a crossing near Balaton, Minnesota. The accident resulted in the deaths of Mr. Kayser and his daughter.

The referee found that the injuries causing Mr. Kayser's death did not arise out of and in the course of his employment. This finding was approved by the industrial commission. Respondents seem to concede that on the Sunday in question deceased intended to transact business for his employer at New Ulm upon his return from Pipestone, and we assume such to be a fact. There is no claim that Kayser violated any rule of his employer or acted outside the course of his employment by working on Sunday. Relator contends that, since at the time of the accident the purpose of the trip to Pipestone had been fulfilled and deceased was on his way to New Ulm to transact the business of his employer, he was then engaged in the usual course of his employment. Respondents claim that since the trip to Pipestone was in no way necessitated by anything connected with the employment any injuries sustained while on that trip, going or returning, did not arise out of and in the course of the employment.

■ We are of the opinion that the conclusion of the commission was compelled as a matter of law. The perils of modern day travel upon the highways are well known. Risk of accident is an ever-present menace. Whether the risks of an employe's travel are risks of the employment or personal depends entirely on the purpose of the travel. When it is necessitated by the employment, the risks incident thereto become risks of the employment and remain so as long as the employe is acting in the course of his employer's business. But when the employe is engaged solely in the furtherance of his own personal mission or a frolic, he is not acting in the course of his employment and must himself bear the attendant risks of his personal venture. Reinhard v. Universal Film Exch. Inc. 197 Minn. 371, 267 N. W. 223, and cases cited. These matters are well settled.

The test for determining whether the travel and its incidental risks are the employer's and thus in the course of the employment, or the employe's, is stated by Mr. Justice Cardozo in Matter of Marks v. Gray, 251 N. Y. 90, 93, 167 N. E. 181, 183, as follows:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been cancelled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

Thus the travel both going and returning and its attendant risk is either the employer's or the employe's, depending upon which one's business necessitates the journey. This test, which is sound, received our approval in Loucks v. R. J. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W. 893, a case involving the liability of the em-

ployer to a third person injured by the negligence of the employe, and also in Reinhard v. Universal Film Exch. Inc. 197 Minn. 371, 267 N. W. 223, a case involving the right of an injured employe to compensation. See, also, Anno. 78 A. L. R. 684.

Thus, applying the test stated to the instant case, the result is obvious. It is undisputed that the trip to Pipestone was taken for a purpose entirely divorced from the employment. The fact that Kayser drove through New Ulm on the outgoing trip is immaterial. On that trip he was engaged solely in the furtherance of a personal enterprise, and in principle the situation is the same as if he had followed some other route. The trip to Pipestone would have been made though Mr. Kayser had abandoned his intention to call on Mr. Ochs at New Ulm. Similarly, that journey would have been cancelled upon failure of the private purpose. That deceased intended to transact business of his employer at New Ulm upon his return has no effect on the conclusion to be reached. That call had nothing to do with the trip to Pipestone, and he did not enter the course of his employment merely upon the fulfillment of his personal errand in Pipestone and the start of the return trip. Nor are we presently concerned with the probability that he would have otherwise taken a trip from St. Peter to New Ulm and return on the employer's business. Had he made such a trip, he would have been acting in the course of his employment, but he did not. In any event, the only travel required by the employment on the day in question was to New Ulm and return. The travel to Pipestone and return was his own and so were the risks. Being on his own business on the outgoing trip, he was still on that business while returning, at least until he reached New Ulm.

Having concluded that deceased's injuries did not arise out of and in the course of his employment, it is unnecessary to discuss error assigned relating to the exclusion of certain evidence by the referee which could in no way affect the result reached.

Affirmed.

PETERSON, JUSTICE (dissenting).

This case involves only a question of law, since the facts are not

disputed. Mr. Kayser was employed to represent the employer in a territory in which New Ulm and Pipestone are located. All details of performing the work, including termini of routes to be traveled, hours of work, and methods to be pursued, were committed entirely to his judgment and discretion. He had no regular route with fixed termini from which to start or return, no regular working hours, nor was he controlled as to the details of doing his work. He was not required to start from or return to St. Peter although his home was there. He was free to choose when he would work. The facts are that the trip from St. Peter to Pipestone was a purely personal errand. But it is undisputed that the trip from Pipestone was to go to New Ulm to see Ochs, the customer. Whether the plans were made in St. Peter or Pipestone makes no difference, because Kayser had the right to select his own route and termini. This he did, by deciding to make the trip from Pipestone to New Ulm for the purpose of calling on Ochs. He was then "carrying out some purpose of his employment in his master's business" as the test of Reinhard v. Universal Film Exch. Inc. 197 Minn. 371, 376, 267 N. W. 223, 226, requires, and the carrying out of that purpose created the necessity for the travel he was then undertaking, so that his employer is charged with the risks of that travel. Matter of Marks v. Gray, 251 N. Y. 90, 167 N. E. 181.

It seems to me that the majority opinion falls into error in applying the rule of cases where the employe is required to travel over fixed routes between specified termini according to directions and within specified hours. For example, it assumes that Kayser's employment required him to travel from St. Peter to New Ulm. It did not—it only required him to travel to New Ulm, from a terminus and over a route determined by him. When he started from a terminus selected by him he entered upon his employment. Harby v. Marwell Bros. Inc. 203 App. Div. 525, 196 N. Y. S. 729, affirmed 235 N. Y. 504, 139 N. E. 711. Next, it assumes that the trip from St. Peter to Pipestone and from Pipestone to New Ulm was for purely personal purposes. This assumption is founded on the idea that Kayser could start on his work only from St. Peter. The undisputed evidence is that he could start from the point which he

determined and which was Pipestone. Another assumption is that because his family rode with him from Pipestone to New Ulm, he was still on a purely personal errand. It was entirely optional with him when to commence the work of that day—when to start to keep the appointment with Ochs. Since he had decided that the trip from Pipestone to New Ulm was to see Ochs in the employer's business, the travel served a double purpose. Such travel was squarely within the test of Matter of Marks v. Gray, *supra*, that "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." The majority opinion deems controlling the thought that if .Kayser had not taken his family *to* Pipestone he would not have had to travel *from* Pipestone. But because when he left Pipestone he was working for his employer as the employment contemplated, and because under his employment arrangement he could start from Pipestone if he chose, it makes no difference what brought him to Pipestone. It is error to assume that when traveling Sunday morning from New Ulm to Pipestone Kayser was going *away* from his work. He had not started to work then. The case would be clear if he had left his family at Pipestone and then gone to New Ulm on business. That he took his family with him confuses only the evidence, not the operative facts. If Kayser, instead of going to Pipestone by way of New Ulm, had gone by another route which was then equally available and which would not take him into New Ulm at all; or, if instead of starting from home he had traveled to Pipestone from a point out on his territory and after arriving at Pipestone then decided to travel from Pipestone to New Ulm in connection with the Ochs business, no one, it seems, would contend that the trip from Pipestone to New Ulm was not in the course of the employment. The supposed situations do not change the controlling facts. They simply clarify the situation and show what rule should be applied in this case. When Kayser decided at Pipestone to go on business to New Ulm, that service to his employer absolutely necessitated travel to New Ulm from Pipestone. In Jeffers v. Borgen Chevrolet Co. 199 Minn. 348, 272 N. W. 172, a salesman was killed while driv-

ing toward Waseca, where he was to meet a friend for a personal engagement and where he was to return his employer's automobile and deliver an order. He had two purposes in being on the road, one personal, one business, but we held that the accident arose in the course of his employment because the trip to Waseca was not a "purely personal one" but necessitated also by his employment.

Cases in which the employe is controlled as to route, hours of employment, and other details of performing the work by the employer's instructions are not in point. In the particulars here important this employe made his own instructions. To hold that the entire trip from St. Peter to Pipestone, on to the finish of the personal errand, whatever that might have required, had to be completed or abandoned before Kayser could commence work is to place restrictions upon his discretion with respect to route, hours, and details of employment which his employer did not see fit to impose. It is idle to say the employment did not contemplate this risk. Kayser was hired to travel within his territory for the company, and he was doing just that when he met his death.

The commission did not apply the correct rule of law to the facts, and its decision should be reversed.

AFTER REARGUMENT.

On December 30, 1938, the following opinion was filed:

LORING, JUSTICE.

■ At the outset of the reconsideration of this case we are confronted with the holdings of this court for the last 19 years that 2 Mason Minn. St. 1927, § 9817, which prohibits interested parties from testifying as to conversations with persons since deceased, applies to proceedings under the workmen's compensation act. State ex rel. Rinker v. District Court, 142 Minn. 420, 172 N. W. 311, Johnston v. W. S. Nott Co. 183 Minn. 309, 236 N. W. 466. Those decisions have stood so long that we are justified in believing that if they were contrary to the legislative intent the legislature would have amended the statute.

■ We have carefully reread the record, and with this rule in mind we find no justification for concluding that the industrial

commission was in error in finding that Kayser's death did not arise out of and in the course of his employment. Without Mrs. Kayser's testimony as to her conversation with Kayser relative to the object of his trip we cannot find as a matter of law that the findings should have been to the contrary. As said in Reinhard v. Universal Film Exch. Inc. 197 Minn. 371, 375, 267 N. W. 223, 225:

"It is for the triers of fact to choose not only between conflicting evidence but also between opposed inferences. * * * It is only where the inference upon which the challenged finding rests is not itself reasonably supported or where it is clear that the whole evidence is in manifest and undeniable preponderance against it (even though there is some support for it in the evidence) that there should be a reversal."

We are not here confronted with the question of whether a finding to the contrary might have been supported by the evidence though it seems to us very doubtful if it could, but we are here confronted solely with the question of whether the inference drawn by the commission may be sustained. It appears that Mr. Ochs was not quite satisfied with the samples of buttons which were shown him by Kayser on the Saturday before Kayser's death. The conversation between Ochs and Kayser was stated by Ochs:

"He then told us that it being Saturday undoubtedly he would have his new line of samples in from Chicago by express, and that *if those buttons came,* he would see us very shortly and undoubtedly the next day with those buttons, because we were in a hurry to place the order for buttons, and he offered to make that trip sooner than he ordinarily would." (Italics supplied.)

And again Mr. Ochs testified:

"We had arranged no definite date for that Sunday because we did not know exactly when he would come, but it was our understanding that he would call us when he arrived in town."

Again he said:

"He expected those samples on that Saturday afternoon which

was the general custom and *if they did come* he would be over. (Italics supplied.)

"Q. But no date specified?

"A. To my mind, the only thing that depended upon it *was whether or not he got the button samples.* (Italics supplied.)

"Q. So I understand from your former answer that no date was specified that he would come if he got the samples?

"A. No, I believe I told you that if he got the samples he would come sooner than he ordinarily would which he expected would be the next day. *He didn't say definitely that he would come on Sunday,* that I won't say, but it was understood between him and me that he would come just as soon as he got them, and he expected that would be when he got home." (Italics supplied.)

And again in response to a question Ochs said:

"Just as I said before that he would come as soon as he could after that. We talked about that a good deal and it is still my recollection that he was going to come the next day because we were in a hurry for those, I remember that distinctly, and he had to go out on the road on Monday in a different direction from ours, and we both expected to do that as a favor to one another.

"Q. On Sunday?

"A. Yes."

There is not a syllable in the evidence indicating that the samples of buttons which Kayser expected came to him on the day they were expected or prior to his trip on Sunday. The question of whether he was on his way to see Ochs depends entirely upon whether he had received the samples. New Ulm was on the direct route between his home and St. Peter and Pipestone, the town where his daughter was to have the interview with the school authorities. Going and coming he could most conveniently go through New Ulm, and without Mrs. Kayser's testimony it appears to us that the question of whether he intended to stop at New Ulm on his employer's business lies entirely in the realm of conjecture. It is true that George Olson found three or four buttons in the

front seat of the wrecked car and a box that was possibly a button box with a couple of buttons in it in the trunk of the car, but there is no testimony that these buttons were the samples of the buttons that he expected to show to Ochs, and of course there is nothing unusual in finding buttons in the car of a salesman whose business it is to sell buttons. Had the finders of fact found the other way on the question presented to them we would have great difficulty in sustaining their finding. We cannot upset the inferences which they drew from the testimony which we have recited.

It is true that in our former opinion we stated that it appeared to be conceded that Kayser was on his way to see Ochs at New Ulm, but a careful examination of the respondents' brief discloses that it merely assumes for the purposes of argument that he was. In their brief on this reargument counsel earnestly contend that there is no evidence which requires or permits a finding that such was the case. We think that the inference drawn by the commission from the facts before it is justified by the record. In view of that conclusion, we need not discuss the very clear distinction between the situation in the case at bar and that presented by Fox v. Atwood-Larson Co. 203 Minn. 245, 280 N. W. 856, where Fox while on his vacation at Winona received a copy of a letter, which, as his employer said, amounted to an instruction to go upon his employer's business at the earliest possible moment.

We adhere to our former conclusion.

PETERSON, JUSTICE (dissenting).

I dissent. My views are fully stated in the dissenting opinion already filed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.