## ISABELLE A. LINDELL v. MINNESOTA AMERICAN LEGION PUBLISHING COMPANY AND ANOTHER.[1]

October 25, 1940.

No. 32,427.

*Hoke, Cobb & Janes,* for relators.
*Coursolle, Preus & Maag,* for respondent.

JULIUS J. OLSON, JUSTICE.

*Certiorari* brings for review an order of the industrial commission awarding compensation to the widow of Edwin L. Lindell.

Decedent Lindell during a period of many years immediately preceding his untimely death was one of the out-

[1]Reported in 294 N. W. 416.

standing leaders in the affairs of the American Legion in this state. He had held the top elective office of commander of the Minnesota department, and over a period of more than six years was its adjutant, a full-time salaried job. Because of his ability as a public speaker and the general esteem in which he was held by his fellow men, his services as an orator and organizer were in great demand by the various Legion posts throughout the state, and especially so on such occasions as Memorial Day and Armistice Day patriotic exercises.

In 1937 he was employed by the Minnesota American Legion Publishing Company as its advertising and circulation manager at a monthly salary of $300, under a Minnesota contract of hire. Relator Aetna Casualty & Surety Company is its compensation insurer. On November 10, 1938, while on a trip from Minneapolis, his home, to Jackson, where he was to speak the next forenoon, he sustained fatal injuries, the car driven by him having left the highway and overturned. The referee's finding (No. IV) was "that said accidental injury did not arise out of and in the course of the employment of said employe by the said employer." His widow appealed to the industrial commission, where that finding was reversed. It made its own finding on this, the determinative issue, that "said accidental injury arose out of and in the course of said employment" and compensation was awarded. The only issue presented is whether the record sustains the commission. In its memorandum opinion the facts are fully stated. A brief resumé of the essential parts thereof may be helpful.

Decedent's salary automatically covered both compensation and expenses except that it was customary when he went to outlying legion posts in the state for him to be reimbursed by such post to the extent of three and one-half cents per mile for the use of his automobile, plus other items incidental to the trip paid by him out of pocket.

At the time of his hiring, the publication *The Minnesota Legionnaire,* published by his employer and the official organ of the Legion, had suffered a very considerable diminution in its subscription list, and as a consequence its value as an advertising medium had fallen to a low ebb. The employer's board having this in hand sought to restore its fortunes by the employment of Lindell as its circulation and advertising manager. He made determined efforts to bring about the desired improvement and "succeeded substantially in reversing a declining trend." He devoted a great deal of his time to traveling all over the state in the interests of his employer, making personal contacts with legionnaires throughout the state. Because he was a man of "exceptional personality and ability as a speaker" he was remarkably successful.

There are two days of each year that legionnaires particularly set apart for civic and patriotic observance, Memorial Day and Armistice Day.

The Legion post at Jackson and the auxiliary at Amboy, both located in southern Minnesota, had made urgent requests for speakers at their Armistice Day programs November 11, 1938. The program at Jackson was to take place in the forenoon, that at Amboy in the evening. These posts through Mr. Zwiener, department adjutant and secretary of the employer, secured the promised services of Mr. Lindell to take over both engagements. It was while he was on this trip that his automobile overturned, with the result already indicated.

On his trip he was traveling alone in his own car. In it was found his portfolio "literally full of the various things an active business getter would carry on such a trip." He started from his home in Minneapolis at about 3:30 in the afternoon on November 10, informing his wife that he was going to Jackson.

The subscription list at Jackson had been reduced to the vanishing point. Consequently when the request for a speaker came to Mr. Zwiener he at once sought Mr. Lindell

and "convinced" him of the importance of making this trip, and communicated that fact to the adjutant of the Jackson post, informing him that Mr. Lindell was the advertising manager of the legion paper.

Relators concede that this case comes within the traveling men's cases if the fact is established that at the time of accident he was engaged "on some substantial mission" of his employer. But their contention here is and before the commission was that Lindell at the time of his fatal injury was engaged in a mission of his own to make a patriotic address; that he had done so over a period of many years, using the same speech with a few modifications from time to time; that if it were not for the occasion of making a patriotic address Lindell would not have gone on this trip; that under the act the claimant has the burden of proof; that here the evidence "stands in equipoise," hence "that burden has not been met and no award can be made"; that the commission may not "conjecture or speculate" to arrive at an award since by so doing it would "simply be guessing the employer's money away."

■ The rule for which relators contend is that laid down in Matter of Marks v. Gray, 251 N. Y. 90, 93, 94, 167 N. E. 181, 183 (cited with approval by this court in Loucks v. R. J. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W. 893; Reinhard v. Universal Film Exch. Inc. 197 Minn. 371, 376, 267 N. W. 223; Kayser v. Carson Pirie Scott & Co. 203 Minn. 578, 581, 282 N. W. 801). In situations of this type the "test" to be applied is there stated to be:

"If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone foward though the business errand had been dropped, and would have been canceled upon failure of the private purpose

though the business errand was undone, the travel is then personal, and personal the risk."

■ The commission recognized that this rule "has proper application to the facts" in this case but were of opinion and so found that from a "study of the evidence" Lindell's main purpose was "to serve the interests" of his employer and "was not a mere incident of his trip." In this we concur. It was necessary for Zwiener to "convince" Lindell that this trip should be made. It had been his custom in prior years to go to *northern* Minnesota on such occasions, combining on such trips the purely personal purpose of hunting ducks. In this case there is no proof, nor even suggestion, that, although he was driving his own car in the customary fashion, he had a gun, cartridges, or the other customary paraphernalia going with a duck hunting trip. It is not likely that alert, skillful, capable, and experienced counsel for relators would have overlooked putting in such evidence if it existed. We think the evidence unerringly points to the fact that Lindell's primary purpose in taking over this assignment was the furthering of his employer's interests. Its subscriptions to the *Legionnaire* had disappeared. That, at least, is one reason he was urged to go there. His field was statewide. As such, he was but doing the work for which he was hired and being paid upon a monthly basis by his employer. In addition, his automobile mileage and other expenses were to be paid by the posts to which he was directed to go. Obviously these facts sustain the commission's finding. Its order is therefore affirmed and the writ discharged. Respondent will be allowed $100 attorneys' fees plus statutory costs and disbursements.

So ordered.