ERNEST R. ERICKSON v. ERICKSON & COMPANY AND ANOTHER.[1]

February 27, 1942.

No. 32,945.

*Nelson & Cedergren,* for relator.
*Gillette & Meagher,* for respondents.

[1]Reported in 2 N. W. (2d) 824.

PETERSON, JUSTICE.

The decision of the industrial commission denying the employe compensation found all the facts in his favor except the one whether the accidental injury arose out of and in the course of his employment, and on that issue the finding was against him. Decision of that question depended on whether or not the travel in which he was engaged at the time of injury was for a business purpose of the employer or for a purely personal purpose of the employe.

The employer is an architectural and engineering company with its principal office in Duluth. During the summer of 1939 it had considerable business in Brainerd and vicinity, including the architectural and engineering work in connection with the erection of a new schoolhouse at Pillager. The employe, an architect and engineer, had charge of the work. Because the employer's business required the employe's attention both during and after regular business hours, there were no restrictions on the time or the place of his service. During the summer of 1939, employe and his family lived in a cottage at Lake Hubert about 12 miles northwest of Brainerd.

On the night of July 14, 1939, employe was injured while traveling in his automobile on the so-called Randall road at a point about eight miles south of Pillager as the result of missing a turn and going off the road.

As to the general location of the places involved, Pillager is about 23 miles south and west of Lake Hubert, and Lake Alexander is about 10 miles in the same direction from Pillager. The Randall road between Pillager and Randall runs past Lake Alexander.

The employe first drove from his cottage at Lake Hubert to Pillager and then on the Randall road toward Lake Alexander. It is undisputed that the part of the trip between Lake Hubert and Pillager was for the employer's business purposes. The real dispute is whether the portion of the trip between Pillager and Lake Alexander was for a business purpose of the employer or solely

for the employe's personal purpose. The business at Pillager concerned a conference with the officials of the school district about changes in the specifications for a picture screen and classroom desks. Employe also claims that there was some business concerning the pump for the well. In any event, the employer's insurer contends that none of this business occasioned any travel by the employe between Pillager and Lake Alexander and that the employe engaged in such travel solely for the personal purpose of getting a guest's daughter and taking her to his cottage.

Employe's claimed business purpose for the trip from Pillager to Lake Alexander was an urgent necessity to obtain information from one Peterson, a well driller, who lived on the Randall road beyond the lake, concerning the depth and capacity of the well drilled by him at the school to enable the employe to prepare an addendum to the specifications for either a shallow or deep well pump, depending upon such information, and to mail this addendum to the PWA office in Omaha the next day for approval.

Employe's testimony bore out his claims. He testified that the PWA had set September 1, 1939, as a dead line for the completion of the job; that it was decided at a meeting of the school board on July 7 to amend the specifications; that on July 10 he found that the well, which Peterson had drilled, could not be used because of its proximity to a sewer, contrary to state health regulations; that a new well at a different location had to be drilled during the week, which he intended to inspect on the afternoon of the 14th, but failed to do so; that advertisement for bids under the changed specifications had to be postponed one week to July 21 pending approval of the PWA office in Omaha; and that it was necessary to have the changes in the mail on the 15th in order to get them to PWA for approval and returned prior to the date set for publication.

There was, however, another side to the picture. Although employe claimed that the pump matter was urgent and had to be attended to that night, he testified that at the school board meeting a week before, on July 7, the matter of the pump was post-

poned because it was to be handled through different channels, and it was decided to advertise separately for bids for the pump. That is exactly what was done. The changes in the specifications covering the picture screen and the desks evidently were sent to the PWA office for approval prior to the 14th, because approval was given on the 15th. Likewise, the specifications, which were in employe's car, covered the screen curtain and the desks, but contained no reference whatever to the well or pump. The advertisement for bids, which supposedly covered the pump also and was held up pending PWA approval of the change in the pump specifications, covered only the picture screen and desks without any reference to the pump, and was published beginning the week of the 21st following the PWA approval of the 15th. The pump matter apparently had no connection with the picture screen and desks.

Peterson had nothing to do with the type of pump to be installed. That matter was for the employe's exclusive determination. In order to determine the type of pump, it was necessary to test the well to ascertain its depth and volume of water production. This could be done only in the daytime at the well with Peterson's aid. A conference at night with Peterson at his home was utterly useless for the purposes for which the employe claimed he intended to have it.

The purely personal purpose of employe is claimed to be that he went to get one Janet Nicc, the daughter of one of his guests, at the cabin of one Moats at Lake Alexander and take her to his cottage at Lake Hubert. Janet's father, a witness for employe, accompanied him on the trip. He testified that before leaving the cottage at Lake Hubert employe stated that he had some business in Pillager (presumably at the school) and that he might as well "kill two birds with one stone and pick up" Janet on the same trip. The witness was not informed that the employe had any business concerning the pump, the specifications, or with Peterson.

About a month after the accident the employe, while still confined in the hospital, gave the adjuster of the employer's insurer a detailed statement purporting to be his version of what he did and

the reasons for his actions on the night of the accident. The adjuster wrote the statement in longhand and asked the employe to sign it. This he refused to do. The adjuster had the statement typewritten, sent it to the employe, and requested him to sign. Employe had his attorney (other than his present counsel) revise the statement, and he then signed it and returned it to the adjuster. In all the statements (the oral one, the adjuster's typewritten one, and that of employe revised by his attorney), employe stated that before he started from Lake Hubert he intended to go to Pillager only, and that when he was informed that Janet Nice was at Lake Alexander he decided to pick her up, since he had to go to Pillager anyway. In none of the statements was there any reference to any business for the employer on the part of the trip between Pillager and Lake Alexander, the well, pump, Peterson, or the PWA. The first time any such business purpose was asserted was on the trial before the commission.

The commission expressly rejected employe's claim that the travel from Pillager toward Lake Alexander was occasioned by any business of the employer and found that the accident did not arise out of and in the course of employe's employment.

1. An accidental injury to an employe while engaged in travel may arise out of and in the course of his employment although such travel is for the dual purposes of the employe and employer. Where the employe's work creates the necessity for travel, whether it be for the dual purposes of employer and employe or solely for the purposes of the employer, such travel and its incidental risks are in the course of the employe's employment, but not otherwise. Lindell v. Minnesota Am. Legion Pub. Co. 208 Minn. 415, 294 N. W. 416. The question in the particular case is one of fact, where the evidence is conflicting. A finding on conflicting evidence that an accidental injury to an employe arose or did not arise, as the case may be, out of and in the usual course of his employment will be sustained the same as any other finding on such evidence. Where an employe was injured while engaged in travel and the evidence was conflicting as to whether the travel was occasioned

by the employe's work, we sustained a finding in favor of the employe or his dependents in cases like Johnson v. Crane Co. 210 Minn. 519, 299 N. W. 19; Lindell v. Minnesota Am. Legion Pub. Co. *supra;* and Jeffers v. Borgen Chevrolet Co. 199 Minn. 348, 272 N. W. 172, and in favor of the employer in cases like Kayser v. Carson Pirie Scott & Co. 203 Minn. 578, 282 N. W. 801, and Lunde v. Congoleum-Nairn, Inc. 211 Minn. 487, 1 N. W. (2d) 606. In cases of this kind as well as in others, we will direct a finding only where there is no dispute in the evidence and the inference which legitimately may be drawn therefrom, and the finding follows as a conclusion of law. Fox v. Atwood-Larson Co. 203 Minn. 245, 280 N. W. 856. In the final analysis, decision in the instant case depends on whether or not the evidence was such as to compel a finding in favor of employe as a matter of law.

2. The case does not come, as employe contends, within the rule of O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430; Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913; and similar cases, that the trier of fact must accept as true the positive, unimpeached testimony of a credible witness, including a party, unless it is shown to be improbable or inconsistent. *Cf.* Dege v. Produce Exchange Bank, 212 Minn. 44, 2 N. W. (2d) 423. True, employe's testimony is positive, but otherwise it does not come within the rule invoked. Where testimony is impeached by contradiction or is shown to be improbable or inconsistent, its weight and credibility are for the commission. Hillman v. Northwest Fruit, Inc. 207 Minn. 377, 291 N. W. 609.

Employe urges that his testimony that the trip from Pillager to Lake Alexander was for dual purposes, *viz.,* the business one of attending to his employer's business and the personal one of picking up Janet Nice, is not impeached by his prior statements in which he stated that the trip from Lake Hubert to Pillager was for a business purpose, and that from Pillager to Lake Alexander was for the purely personal purpose mentioned without referring to the business purpose now claimed.

A person's purpose and intention are subjective matters and can be known only as he makes outward manifestation of them. Here, employe has made different manifestations. Prior to the hearing he said that his purpose was purely personal—to get Janet Nice. At the hearing he testified that he had two purposes, one business and the other personal, and that the travel was occasioned by the business purpose. Both versions cannot be true. One is, but which one?

A witness may be impeached by contradicting his testimony. Failure to assert a fact when it would have been natural to assert it permits an inference of its nonexistence. The nonexistence of a fact established by the inference arising from such an omission to assert may be used to contradict an assertion of its existence. A witness may be impeached by a prior statement, either written or oral, purporting to narrate all the facts with respect to a particular event, which omitted to refer to a vital or important fact to which he testified. Roberts v. Ray Bell Film Co. 206 Minn. 351, 288 N. W. 591; Alward v. Oakes, 63 Minn. 190, 65 N. W. 270; C. M. & St. P. R. R. Co. v. Harrelson (8 Cir.) 14 F. (2d) 293; McDowell v. General Mut. Ins. Co. 7 La. Ann. 684, 56 Am. D. 619; Foster v. Worthing, 146 Mass. 607, 16 N. E. 572; State v. Rosa, 71 N. J. L. 316, 58 A. 1010; 3 Wigmore, Evidence (3 ed.) § 1042. In Barrett v. N. Y. C. & H. R. R. Co. 157 N. Y. 663, 669, 52 N. E. 659, 661, the court used language applicable here:

"If, before he had commenced the suit, and while the whole transaction was fresh in his mind, he had attempted to describe the occurrence, and had omitted from the description the most important circumstance that he testified to at the trial, and the only circumstance which would enable him to recover, surely this discrepancy in the two statements might have been brought by the defendant to the attention of the jury. (1 Greenleaf's Ev. §§ 196, 201.) When a party to an action before suit attempts to state the facts of the case and omits to state the only fact upon which a subsequent action could be based, and then at the trial attempts to supply this missing link by his own testimony, surely all this

may be presented to the jury to enable them to judge whether the party told the truth as a witness upon the trial or before he became a litigant when the facts and circumstances were fresh in his memory."

Some cases hold to the contrary, upon the theory that testimonial assertion of a fact omitted from a prior statement simply amounts to a statement of something additional. That sort of reasoning is unsound. Some cases cited to support the view stated simply hold that there was no contradiction in fact, because it was not natural under the circumstances that the witness should have asserted in his former statement the existence of the fact, or because there was a restriction on his freedom to speak which prevented the assertion of the fact, as where the statement was given in legal proceedings and the examination was so conducted as not to permit the witness to state the fact in question.

We also think there was some inconsistency in employe's testimony. His attempt to tie the purpose of the trip from Pillager to Lake Alexander to the postponement of the publication of the advertisement for bids does not hold water. The claim that the publication was postponed from July 14 to July 21 for the purpose of securing PWA approval of the amendments to the specifications covering the picture screens, desks, and water pump and that it was urgent for him to get information that night concerning the type of pump seems to be punctured by the facts that the picture screen and desks, on the one hand, and the pump, on the other, were handled as separate matters; that the pump matters were postponed, to be handled through different channels; that the amended specifications for the picture screen and desks were in the hands of the PWA at the time the accident occurred and were approved the following morning; and that the publication, which was held up until July 21, covered only the picture screen and desks.

The weight and credibility of employe's testimony was for the commission. It was not bound as a matter of law under the cir-

cumstances to accept his version of the facts as true. The finding of the commission is sustained.

The writ is discharged and the order affirmed.