ANNA OESTREICH v. LAKESIDE CEMETERY ASSOCIATION
AND ANOTHER.[1]

July 8, 1949.

No. 34,959.

*Leslie C. Scholle* and *A. Paul Lommen,* for relators.

*G. W. Mantor,* for respondent.

[1]Reported in 38 N. W. (2d) 193.

PETERSON, JUSTICE.

Certiorari to review an award of compensation.

The questions for decision are:

(1) Whether one, employed by a cemetery association the year round to perform services under its control and direction digging graves, cutting grass, shoveling snow, and the like, who was paid in the summer season upon an hourly basis and in the winter season at a stipulated sum for each grave dug and for each hour of snow shoveling, was an employe within the meaning of the workmen's compensation act or an independent contractor;

(2) Whether an accidental injury to a person so employed, caused by slipping and falling on a public street while he was on a special errand for his employer, arose out of and in the course of his employment; and

(3) Whether such an injury arose out of and in the course of the employment, notwithstanding the fact that the employe while on such an errand performed as an incident thereof an act for his own benefit, which had no causal connection with the happening of the accident.

Herman Oestreich was employed by Lakeside Cemetery Association to perform services under the direction and control of its president, consisting of digging graves, cutting grass, shoveling snow, and the like. During the summer season he worked full time and was paid 65 cents per hour. During the winter season he worked only when requested to do so and was paid $10 for digging a regular grave and $12 per grave for a vault and on an hourly basis for shoveling snow. When there was work to be done during the winter season the association's president communicated with him and arranged to have him attend to it. The procedure depended on the work to be done, but in each case the president, either at his office or at Oestreich's home, showed him exactly where the grave to be dug was located, and "how and when it was to be completed." Where a vault was to be used, Oestreich went to the undertaker in charge of the burial to obtain measurements of the

vault for the purpose of enabling him to dig a grave of proper size.

The accidental injury causing Oestreich's death occurred during the winter season, on January 30, 1947, when the streets in Hastings, where he lived, were icy and slippery. He was then working and being paid on the wintertime-work basis. On the evening before the accident causing Oestreich's death, the association's president sent word to him through a neighbor to come to his office and get instructions relative to a grave to be dug. A vault was to be used, and consequently it was necessary to get the measurements from the undertaker. Before leaving home, Oestreich's wife (respondent here) requested him to purchase some lard and yeast "if he had time." Oestreich slipped and fell on an icy street and sustained head injuries before he ever reached the undertaker's establishment, the store, or the president's office and died therefrom after he had completed his mission to all three of them. When he arrived at the president's office, he had already been to the undertaker's establishment and to the grocery store, where he had purchased the lard and the yeast.

■ Our rule is settled that right of control as to details of execution of the work to be performed is the test as to whether a person is an employe within the meaning of the workmen's compensation act or an independent contractor; that he is an employe if his employer has the right of control over the performance of the work to the extent of prescribing in detail the manner in which it is to be executed; and that he is an independent contractor where he undertakes to do a specific piece of work without submitting himself to the control of the employer as to the details of doing it and with responsibility to the employer only for the result of the work. Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285; 6 Dunnell, Dig. & Supp. § 10395. Here, the evidence supports a finding that the employe was subject to the employer's control in respect to details of executing the work to be performed by him. That being true, the finding that he was an employe is sustained.

■ An employe accidentally injured on a public street while he is on a special errand for his employer is covered by the compensa-

tion act. Nehring v. Minnesota M. & M. Co. 193 Minn. 169, 258 N. W. 307.[2] The fact that the employe was required to go to the undertaker's establishment to get the measurements of the vault to be placed in the grave to be dug as a basis for the instructions he was to receive from the president at his office brings the instant case within the rule. There may be other reasons for so holding, but we need not so decide.

■ The fact that the employe purchased some groceries for his wife and himself while on the special errand for his employer does not compel decision that the accidental injury sustained by him did not arise out of and in the course of his employment, for the reason that the purchase of the groceries had no causal connection with the happening of the accidental injury. Accidental injury to an employe while traveling on a public street and highway arises out of and in the course of the employment when the employment makes such travel necessary. It is not necessary that the sole purpose of such travel is to serve the employer's purposes, but it must be the dominant one—the one which necessitated such travel. The test is whether the employe's work created the necessity for travel. If it did, the employe is in the course of his employment, even though he is serving at the same time some purpose of his own. Kayser v. Carson Pirie Scott & Co. 203 Minn. 578, 581, 282 N. W. 801, 803. Here, it is plain that the employe's reason for going downtown was the special errand for his employer. That purpose necessitated his travel. After he had determined to travel for his employer's purposes, the matter of purchasing groceries as an incident thereof arose—his wife asked him to make them "if he had time." In the Nehring case, *supra,* the employe while on a special errand for his employer deviated therefrom before the accident occurred to make some purchases for himself. Because those purchases had no causal connection with his injury, the employer was

[2]See, McBride v. Preston Creamery Assn. 228 Minn. 93, 36 N. W. (2d) 404; Locke v. County of Steele, 223 Minn. 464, 27 N. W. (2d) 285; Lindell v. Minnesota Am. Leg. Pub. Co. 208 Minn. 415, 294 N. W. 416; 6 Dunnell, Dig. & Supp. § 10404.

held liable for compensation. Here, the deviation, if any, occurred after the accidental injury had happened and likewise had no causal connection with the employe's accidental injury. Because that is true, the employer here is also liable.

In conclusion, we think that the finding that the employe died of an accidental injury arising out of and in the course of his employment is sustained by the evidence.

Respondent is allowed an attorney's fee of $250 in addition to her regular costs and disbursements.

Affirmed.